## Richardson v. Horn et al.

Feb. 13, 1940.

George K. Holbert, Judge.

Faurest & Faurest and C. O. Carrier for appellant.

Allen P. Cubbage and J. R. Layman for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming in part and reversing in part.

The question involved is the right of appellees to continue to maintain and use a sewer which was constructed in 1919 across the lot now owned by appellant.

Prior to January 30, 1889, John M. Thomas owned a large lot in Leitchfield, Kentucky, fronting on Main

Street and the public square. On part of the lot front-ing on Main street Thomas operated a butcher shop. On January 30, 1889, Thomas conveyed part of the lot fronting 52 feet on Main Street and extending back 70 feet along the public square to R. C. Hazelip, president of the Grayson County Bank. The deed contained this provision:

"It is agreed that the space being about eight feet wide lying on the North side of the above described ground running its full length being all of said lot No. 1 from the new Butcher Shop as it now stands and the above described lot shall be kept as a pass-way between said Thomas and the said Hazelip or bank for the mutual benefit of said parties."

On April 28, 1900, the Grayson County Bank con-veyed the lot fronting 52 feet on Main street to the Grayson County National Bank. A building had been erected on the southwest corner of the lot and was used by the bank. In 1906 a building, referred to in the rec-ord as the James Grocery Company building, was erected on that portion of the lot not occupied by the bank building. It extended around two sides of the bank building and fronted both on Main street and the public square. In 1910 a downspout was put on the James Grocery Company building so as to carry the water from the roof onto the lot then owned by John M. Thomas. In February, 1919, a sewer was run from the bank building across the 8-foot strip of ground, over which the bank had a passway, to a sewer which had been constructed by Thomas and which extended from his butcher shop along the 8-foot strip and around the back of the butcher shop. The downspout from the James Grocery Company building, which was on the lot owned by the bank, was tapped into the connecting sewer. John M. Thomas was dead when this sewer was constructed, and permission to run a sewer across the Thomas lot and connect it with the Thomas sewer was obtained by the bank from his heirs. Before the con-necting sewer was constructed, the bank executed and delivered to the Thomas heirs the following writing:

"For and in consideration of the privilege of running a sewer from our Bank Building across lot of J. M. Thomas & Sons at back of our building we

agree to remove same at our expense should they sell said lot to any one and they object to said sewer or should said J. M. Thomas & Son build upon said lot and find it in their way or injurious to them.

"Witness our hand this Feb. 26, 1919.

"(Seal)        Grayson County State Bank
               "By R. J. Bassett, P.

"Witness
    "R. C. Richardson
    "Thos. C. James."

This writing was recorded in the office of the Grayson county court clerk June 21, 1937. On April 11, 1924, Henry H. Thomas, son of John M. Thomas, purchased the interests of the other heirs in the John M. Thomas lot, which included the 8-foot strip adjoining the bank's lot and over which the bank had a passway. Henry H. Thomas conveyed the lot to appellant, R. C. Richardson, on May 18, 1937. The bank's lot on which was located the bank building and the James Grocery Company building was conveyed August 3, 1935, by the bank's liquidating agent to the appellee Aubrey Moorman, who later conveyed to appellees Nell A. Harris and Elta S. Gardner an undivided one-third interest each in the property. On April 1, 1938, Moorman, Gardner, and Harris conveyed to appellee G. H. Roberts a part of the lot fronting about 31 feet on the public square and running back to the 8-foot strip, over which the owners of the lot have a passway, and on April 9, 1938, they conveyed to appellee C. A. Horn a part of the lot fronting about 25 feet on Main street and running back with the 8-foot strip to the part conveyed to G. H. Roberts. The lots conveyed to Roberts and Horn comprise that part of the original lot owned by the Grayson County Bank on which was located the James Grocery Company building. On May 21, 1938, Aubrey Moorman, Elta S. Gardner, Nell A. Harris, G. H. Roberts, C. A. Horn and J. S. Gentry notified, in writing, the appellant R. C. Richardson that they objected to the erection of any structure upon a small parcel of land described as follows:

"Beginning at the northeast corner of the James Grocery Company building (now occupied by G. H. Roberts) same being also at the northwest corner

of the Gentry Building; thence east with the said Gentry building 2 feet and 8 inches; thence N 2 feet; thence W 2 feet and 8 inches; thence S 2 feet to the beginning.''

They also objected to the erection of any structure on or the obstruction in any manner of the 8-foot strip between the James Grocery Company building and the Thomas meat shop, extending from Main street eastwardly a distance of 107¼ feet.

J. S. Gentry owned a lot fronting on the public square and adjoining the G. H. Roberts lot on the east. On May 27, 1938, R. C. Richardson had served on C. A. Horn the following notice:

"Notice to C. A. Horn, Leitchfield, Ky.

"You are hereby notified and forbidden to place anything of a permanent nature on my property that lies between your property and the Thomas Meat Shop, as I have a deed to this property and do not want it obstructed in any way. Signed this the 27th day of May, 1938.

"R. C. Richardson (signed)
"R. C. Richardson, landowner."

On the same day, he had served on Aubrey Moorman, Elta S. Gardner, Nell A. Harris, G. H. Roberts, and C. A. Horn, the following notice:

"You are hereby notified that I have heretofore purchased, together with other property, the eight-foot strip of land between the Thomas Meat Shop and the Grayson County State Bank Building, or the old James Grocery Company Building, a part of which property is now owned by C. A. Horn and G. H. Roberts, and I hereby give notice that I do not want the sewer line to remain on the above described property, which said sewer line was placed on this property pursuant to an agreement entered into February 26, 1919, as of record in Miscellaneous Record Book 2, page 164, records of the Grayson County Court Clerk's office. Therefore, you are hereby notified to remove the said sewer line at once from the property between the Thomas Meat Shop and the C. A. Horn and G. H. Roberts property, but you are not to interfere with said sewer

line between the J. S. Gentry property and the Thomas Meat Shop, or to interfere with the sewer where the down-spouts from the G. H. Roberts and J. S. Gentry property connect with said sewer.

"Signed this the 27th day of May, 1938.

"R. C. Richardson."

On August 1, 1938, R. C. Richardson brought this action against C. A. Horn, G. H. Roberts, Aubrey Moorman, Elta S. Gardner, and Nell A. Harris for a declaration of the rights of the parties. The issues finally raised by the pleadings were whether or not the defendants had the right further to use the sewer constructed in 1919 across the 8-foot strip of ground and connecting with plaintiff's sewer, and whether or not the defendant C. A. Horn had the right to place garbage cans and other obstructions on the 8-foot strip adjoining his lot. A large amount of proof was heard, and, upon submission of the case, the chancellor adjudged that the plaintiff, R. C. Richardson, was the owner in fee simple of the 8-foot strip of ground extending from Main Street in an easterly direction to the northwest corner of the Gentry building, and that the defendants had the right to an open passway over this strip. He further adjudged that this passway did not extend any further east than the northwest corner of the Gentry building and that the ground owned by the plaintiff east of this point was not subject to any easement for a passway, but was subject to an easement for a sewer from the defendants' property. He adjudged that the owners of the James Grocery Company building had the right to use the sewer as then located on plaintiff's lot and to have it connected with plaintiff's sewer, but he required the plaintiff to provide some other sufficient and adequate means to take care of water and sewage from the bank building after it reached that point on his property formerly known as the Yates lot. The plaintiff has appealed, and the defendants have been granted a cross-appeal.

Undoubtedly, the use of the sewer from the property now owned by appellees to the Thomas sewer and the use of the Thomas sewer from the point of connection across the lot in the rear of the butcher shop to the point where it connected with a city sewer was per-

missive. Before the connecting sewer was constructed, the bank, then owner of the property now owned by appellees, obtained permission for its construction from the Thomas heirs, owners of the adjoining lot, and for the use of the private sewer extending from the butcher shop across the Yates lot, also owned by the Thomas heirs. The bank gave to the Thomas heirs a writing signed by it agreeing to remove the connecting sewer if they should sell the lot and the purchaser desired that it be removed. There is no evidence that the sewer was ever used under any claim of right other than the right under the agreement of February 6, 1919. No right by adverse user was acquired. The owner of the bank lot, beginning in 1910, cast the water from the roofs of its buildings onto the Thomas lot through a downspout for a period of nine years, but the downspout was then connected with the sewer and this adverse user ceased.

The chancellor drew a distinction between the rights of appellees Moorman, Harris, and Gardner, owners of the lot occupied by the old bank building, and the rights of appellees Roberts and Horn, owners of that part of the original lot occupied by the James Grocery Company building. He held that appellees Roberts and Horn had the right to continue to use the sewer, but that the owners of the bank building could only use the sewer across the 8-foot strip, and if appellant objected to their use of it beyond that point "he must provide some other sufficient and adequate means to take care of water and sewage at that point." We find no evidence justifying such a distinction or warranting a finding that any of the appellees are entitled to the use of a sewer over appellant's property without his permission. All the property now owned by appellees was owned by the bank at the time permission was obtained to construct the connecting sewer in 1919, and the property remained in one lot and one ownership until April, 1938. There was no difference in the use of the sewer in so far as the two buildings on the lot were concerned. No doubt, the bank would have acquired by prescription the right to cast the water from the roofs of its buildings onto the Thomas lot through the downspout if that condition had continued the requisite length of time, but in 1919 it tapped the downspout into the sewer, which it had constructed by permission, and from that

time on the use of the sewer for the purpose of carrying off the water collected into the downspout was permissive. The agreement and the acts of the parties are susceptible of no other construction. Certainly, it was not the contemplation of the parties that the right to construct the connecting sewer and use the Thomas sewer for the purpose of carrying off the water and sewage from inside the buildings on the bank lot was permissive, while the right to carry off the water collected into the downspout from the roofs of the same buildings was not permissive and that a prescriptive right for that purpose would result at the expiration of fifteen years. When the use of another's land is originally acquired by permission, the character of use is established and the use continues to be permissive until notice is brought to the owner of the land that the character of the use has been changed. In Louisville & N. R. Co. v. Cornelius, 165 Ky. 132, 176 S. W. 964, 968, it was said:

> "The mere permissive enjoyment of an easement however long continued, will never ripen into title by prescription. Conyers v. Scott, 94 Ky. 123, 21 S. W. 530, 14 Ky. Law Rep. 784; Harris v. Ash, 24 S. W. 868, 15 Ky. Law Rep. 679; Boyd v. Morris, 106 S. W. 867, 32 Ky. Law Rep. 642. And where the user of an easement is permissive in its inception, it continues to be a permissive use until the distinct and positive assertion of a claim of right is brought home to the owner of the servient estate."

The present litigation apparently arose out of an unfortunate misunderstanding between neighbors. There is little evidence that appellant will be greatly inconvenienced by the continued use of the sewer by appellees, while the latter will be compelled to incur considerable expense in order to take care of the water and sewage heretofore carried off through the Thomas sewer. However, appellant is insisting on the enforcement of his legal rights, and no valid reason has been pointed out why it should be denied him. We conclude that the chancellor erred in holding that appellees have any right to the use of the sewers over appellant's land and in refusing to adjudge that they should remove the sewer connecting their property with the Thomas sewer.

On their cross-appeal appellees insist that the chan-

cellor erred in adjudging that the 8-foot space over which appellees have a passway extends only a distance of 70 feet from Main street, the depth of the lot conveyed to the Grayson County Bank by John M. Thomas. It is their contention that the 8-foot passway extends eastwardly from Main street a distance of 107¼ feet, the depth of lot 1 on the plat of the city of Leitchfield. There is nothing in the deed from Thomas to the bank to warrant this construction. It clearly was the intention of the parties to provide for a passway over the 8-foot space between the wall of the butcher shop and the south line of the lot conveyed to the bank. In support of their contention, appellees rely upon the following provision in the deed from J. M. Thomas to R. C. Hazelip, president of the Grayson County Bank:

> "It is agreed that the space being about 8 feet wide lying on the north side of the above described ground running its full length, being all of said lot No. 1 from the new butcher shop as it now stands, and the above described lot shall be kept as a passway between said Thomas and said Hazelip or the Bank, for the mutual benefit of the said parties."

What this provision means is that all of that part of lot No. 1, which is located between the butcher shop and the south line of the lot conveyed to the bank, should be kept as a passway, but it did not mean that the passway should extend eastwardly beyond the bank lot.

Appellees Moorman, Gardner, and Harris claim that they are the owners of a wedge shaped parcel of ground lying north of the north wall of the James Grocery Company building and being 70 feet long and 1 foot 9 inches in width at its eastern end and narrowing to a point at Main street. The deed from J. M. Thomas to the Grayson County Bank described the lot as fronting 52 feet on Main street and running east with the line of the public square about 70 feet. The buildings of appellees are only 50 feet 3 inches wide on the east end of the lot and extend eastwardly along the public square only 67 feet 4½ inches. In the deeds from appellees Moorman, Gardner, and Harris to appellees Roberts and Horn, the northern boundary of the lots conveyed was defined as the north side of the north wall of the James Grocery Company building, and it is claimed that this

left the title to the wedge shaped parcel north of that wall in the appellees Moorman, Gardner, and Harris. Property lines along streets are frequently indefinite and uncertain, and that is true in this case, but, aside from that, an examination of the proof and deeds shows that the various owners of the lot have treated and considered the north side of the north wall of the James Grocery Company building as the north boundary line of the lot, and we think the chancellor correctly adjudged that the appellees Moorman, Gardner, and Harris did not own the fee simple title to the triangular parcel claimed by them. The chancellor also correctly held that appellee C. A. Horn had acquired no right to drain water from the basement of his building onto appellant's lot or to use the 8-foot strip adjoining his lot for any purpose other than a passway.

The judgment is affirmed on the cross-appeal and reversed on the original appeal, with directions to enter a judgment in confromity herewith.