# Newberry et al. v. Hardin.

March 13, 1942.

W. R. McCoy and John L. Harrington for appellants.

J. B. Clark and Wallis M. Bailey for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Two contiguous lots owned by contesting parties are in the town of Inez, each a portion of a lot theretofore owned by J. C. Newberry. It is difficult to describe them due to lack of explanation in briefs, which merely refer us to three maps filed with the record. Lot No. 2 is owned by appellee; No. 3 by appellants. Both face Rock-Castle Creek on its west side, lot No. 3 being down the stream. The controversy is whether or not appellants, under an alleged grant and use, have the right to a way across the lot of appellee in passing to a public street. When appellee bought there was no division fence between one line of appellee's property and that of appellants, and appellee built a fence along her northern line, the effect of which, as is claimed, was to deny appellants access over appellee's lot to the street. The building of the fence brought about the controversy.

Appellee began suit in September 1939, alleging that she owned and was in possession of lot No. 2; that appellants were, removing fences, and otherwise trespassing on her lot, over her objection, claiming that they had the right to its use. She sought damages and injunctive relief. Appellants denied, and then affirmatively plead that Grady Newberry was the owner of a lot originally a part of the lot described in plaintiff's deed; that while their deed granted a right of way over the lands described in plaintiff's petition, the former owner had laid out another right of way to which they were entitled, and which they had used from time of deed to the institution of suit; that plaintiff knew of its existence and use when she purchased. They plead adverse possession and continued use of the passway; sought dismissal of plaintiff's petition and a quieting of title.

Plaintiff in reply gave us some insight to the situa-

tion. She said she owned the first lot (No. 2) after you cross a bridge going up Middle Fork, and the second lot as you go down Cold Water Fork. Grady Newberry owns the third lot adjoining lot No. 2. That from all these lots there has been and is now a passway which has been used for more than twenty years, located between the two houses and the creek. In front of her house, and down this right of way, concrete sidewalks have been built, and have been used for more than 15 years. The passway claimed by appellants ran from the front of their line 86½ feet to join a sidewalk on appellee's property, leading to the street.

In conveying lot No. 3 grantor conveyed to the grantee a right of way over the original lot along the creek bank. When J. C. Newberry deeded her the lot there was no fence between lots Nos. 2 and 3, and she attempted to build a fence along this line, crossing the passway claimed by defendants, and they tore part of it down.

Defendants admitted that for a number of years there had been a right of way for the purpose of getting to and from the lots involved, but that the right of way described in plaintiff's reply referred to the road under the creek bank below the lot owned by defendants, which was impassible and had never been used by them; that in deeding lot No. 3 grantor provided that the right of way should be on top of the bank, and thereafter the involved passway was thus located, and used by defendants. It is admitted that Grady Newberry removed a portion of the fence built by appellee near to his south line. Rejoinder and surrejoinder closed the issues.

The deed from J. C. Newberry and wife to Grady Newberry, dated August 17, 1923, conveyed a tract of land "situate on the south side of Cold Water Fork of Rock Castle Creek," describing it, and providing "second party is to have right of way over parties of the first part along the creek bank." The deed to Mrs. Hardin dated January 30, 1939, conveyed to her the tract which had been conveyed to J. C. Newberry, using same description with the following exclusion: "There is excluded from the above conveyance that certain lot conveyed to Grady Newberry."

As will be seen, the deed to Grady Newberry did not precisely define the right of way, nor is it mentioned in Mrs. Hardin's deed, and the latter insists that the

way granted is to run along the bank of the creek, whereas defendants claim that their passway was established, and has since been used at a point which crosses the tract conveyed to Mrs. Hardin, contending that it is "along the bank." As we progress it appears that what is called a right of way is a pathway from the Newberry residence to the sidewalk.

The surveyor who filed maps, surveyed the property for both parties, and finally undertook to make a composite map. He was first attempting, as he said, to establish what he called the creek lines of the properties, which he said did not extend to the bank, indicating that the roadway running on top of and at some points under the creek bank, was not included in the various deeds. This roadway is not in dispute.

There was a mass of proof taken, and upon submission the chancellor adjudged defendants "a reasonable right of way over the property claimed by plaintiff along the creek bank with the right to use same at all times without interference * * *," but enjoined defendants "from using said right of way as formerly used by them up until the filing of the action," and perpetually enjoined plaintiff "from interfering with defendants' right of way as herein set out," and directed her to "remove said obstruction, if any, across said right of way of the defendants, and defendants are quieted in their title to said right of way as herein set out."

It is not disputed that the pathway, which is claimed by appellants crosses the lot of appellee from her north dividing line for 86½ feet at distances ranging from 11 to 17 or more feet from the top of the bank, thereby rendering a considerable portion of appellee's lot of little use or value. As we read the proof there is some doubt as to whether or not the pathway has been used constantly by appellants for a period of more than 15 years, upon which claim they base their right, and the chancellor no doubt observed the doubtful manner of later establishment, in connection with the granting of right in appellants' deed, and must have concluded, properly, that the verbal granting of the pathway was not in itself sufficient to constitute an appurtenance, or create burden on the lot of the servient owner. This alleged establishment arose in this manner:

After the purchase of the lot appellants were proposing to build. Mrs. Newberry had planned that the

house be built on the lower end of the lot facing the creek. The mother-in-law insisted that it be built facing the street, and as Mrs. Newberry says, "she pointed out to me that since our right of way was to go through the yard over their property, it would be much better to face the house in that direction to make it more convenient for us to get out." The mother-in-law prevailed, and "pointed out and located the way she intended for us to go, and I agreed with her and faced the house the way she wanted it."

This colloquy would lead to the impression that the daughter-in-law knew that according to the grant the passway was to be located along the bank of the creek. It seems that at the time Mr. Newberry was present, but apparently had little to say, further than, "It will be all right for you to go through there" meaning no doubt that it would be all right while he was the owner. At this point it may be suggested that the title to lot No. 3 was in J. C. Newberry, and he conveyed to the son; Mrs. Levisa Newberry was not joint owner. There were other witnesses, chiefly relations, some of whom testified that they knew of Mrs. Levisa Newberry saying that she wanted a passway through the yard for them, others testifying as to the pointing out of the pathway. Exception were filed to this proof on the ground that Mrs. Levisa Newberry was dead at the time of proof (Subsection 2, Section 606 of the Civil Code of Practice), but ruling thereon was not pressed.

Counsel for appellee does not contend that appellants were restricted by the terms of the deed to the old roadway, but insists that the language "along the bank" is sufficiently definite to show that the passway was to follow the bank so as to obviate the necessity of using the old road. We construe the grant likewise, and not as one purporting to convey a right to the pathway, which was fixed in place and width arbitrarily by Mrs. Newberry and the surveyor.

The appellee is not complaining here of the chancellor's adjudging a "reasonable" passway along the bank of the creek, since she has sought no cross-appeal. We are inclined to the opinion that the way was described in the deed with such definitude as to preclude the idea that parties might later place the claimed burden on the property of the servient owner. The road along the bank was promoted because of necessity. That carved out by

appellants, or more properly (as admitted) by the mother-in-law, was one of convenience. One of the rules. of construction in cases of this sort is that the use of an easement must be as reasonable and as little burdensome to the servient estate as the nature of the easement, and its object will justify or permit, Kentucky & West Virginia Power Co. v. Elkhorn C. Land Co., 212 Ky. 624, 279 S. W. 1082, but appellants contend that where a right of way is not definitely described, the practcial use of a particular way, acquiesced in by the parties, becomes an appurtenant which cannot be changed without consent of the owners, citing Hammonds v. Eads, 146 Ky. 162, 142 S. W. 379, which rule might apply here, if it were not for the fact that there the right granted was "to pass over the other lands," of grantor at high water periods; not the case here where the description of the deed was sufficient to hold the passway along the bank of the creek. The description in the deed was notice to appellee, sufficient only to lead her to believe that the right was to be as described, which fact was surely known also to the appellants.

We are of the opinion that the attempt to lay out a new and different passway did not create an appurtenance or a covenant running with appellant's lot, but at the most merely a permissive use, which the owner of the servient estate had the right to terminate upon her acquisition.

The mere permissive use or enjoyment of an easement will never ripen into title by prescription, and where the use of an easement is permissive in its inception, it continues to be such until the distinct and posi-. tive assertion of a claim of right is brought to the owner of the servient estate. Richardson v. Horn, 282 Ky. 5, 137 S. W. (2d) 394, and cases cited.

In the case at bar we have a deed which grants to the appellants a right of which is not vague or uncertain as to the intention of the parties with relation to place. Stegman v. City of Fort Thomas, 273 Ky. 309, 116 S. W. (2d) 649. Disputes over passways are to be determined largely upon the facts of each case. Carrigan v. Kurtz, 275 Ky. 285, 121 S. W. (2d) 686. The chancellor was the judge of the weight and effect of that testimony, as he was on the question as to whether or not this particular passway was in such use during the claimed period, as to ripen the title, and as to whether or not ap-

pellee had actual knowledge of the existence of the present passway. She had examined the deeds, and admits there was a pathway which was visible when not overgrown with grass. Another witness says that prior to the flood the appellants used a pathway along the bank. Mrs. Newberry herself said that they had laid planks along the present pathway, but they washed away and had not been replaced.

A survey of the proof presents a disputed question as to whether the passway claimed was so visible as to put a purchaser or owner on such notice as would estop the servient owner from successfully objecting to or preventing its further use, and on this proof the chancellor found contrary to the claims of appellants, and held them to the terms of the written instrument. There was sufficient proof to justify his conclusions.

Judgment affirmed.