MILLER, Respondent, v. SOUTHARD et al., Appellants.

(162 N. W. 146.)

(File No. 3752.   Opinion filed March 22, 1917.)

1.  **Easements—Private Alley—Substitution of New Alley-way, Closing and Non-user of Old, Effect as Abandonment of Old.**

    Where, under evidence substantially undisputed, it is shown that an existing easement constituting a private alley in a city block was, by express agreement and express intention, in con-

sideration of the creation of another and wider alley way in said block, closed by the owner of the easement by erection of fences and buildings across the same and planting of trees thereon, which fences and structures remained for years and until destroyed by fire, and that since then said former right of way has been obstructed by fences and other structures, and that at no time since the agreement for substitution of the new alley way has the old one been used or its obstruction objected to by the original owner or his assigns, while the new one was during all said years used by the public and by occupants of said block, including those who created the original alley way, held, that these facts conclusively show that the owner of the realty over which the original alley extended, under an express agreement so to do, intentionally abandoned said former alley way and accepted in lieu thereof, as consideration for such abandonment, the use of a new alley way.

Gates, P. J., and Whiting, J., dissenting.

**2.   Same—Right of Way Easement—Abandonment of by Acts in pais, Effect—Non-user, as Affecting Abandonment.**

The owner of an easement, constituting a private right of way easement in the land of another, may abandon and relinquish such right by act in pais and without deed or other instrument in writing. To show this, there must be acts of the owner indicating an intent either express or implied, to abandon. Mere non-user, however long, will not amount to abandonment.

**3.   Same—Abandonment of—User of New Substitutional Alley, Effect, as Abandonment of Old Alleyway.**

Mere user of a new alley way right of way by the owner of a private easement, constituting another alley way in the same block, who is claimed to have agreed to abandon the old in consideration of the creation and right to use the new alley therein, will not constitute abandonment of the old alley way, without express or implied intention to abandon. But where there is non-user of the old right of way and user of the new with express agreement as well as implied intention to abandon the old way and accept the new in place thereof, it extinguishes the prior easement.

**4.   Evidence—Alleyway Easement, Abandonment of—Declarations of Former Dominant Tenant, Admissibility.**

Declarations of a former owner of the dominant estate made during the ownership, are admissible to show abandonment of an easement to a private alley way.

5.  Easements—Alleyway, Substitution of New for Old, Considera-
       tion for—Cul de sac, Oral Agreement to Dedicate Alleyway
       Over, Effect.

    Where, in connection with a transaction of substitution of
a new alley way in a block in place of an old alley way, the
former owner of the old easement, in a suit to enjoin obstruc-
tion of the old alley way, defended against the claim that he
had abandoned the old right of way on the ground that the
deed granting the easement of the new alley way did not cover
realty extending the new easement to contiguity with his lot,
and that it was a cul de sac between his lot and the end of the
new alley way, and that therefore the establishment of the new
alley way was of no value to him, held, that the evidence con-
clusively shows a dedication by oral agreement, as part of new
right of way, of the ground alleged to constitute the cul de sac,
under an agreement with the owner of the former easement
that he would accept the new alley way in place of the old;
which agreement and acceptance of the new alley way rendered
the use of the latter to him a thing of value.

6.  Same—Alleyway, Oral Dedication of—Written Grant, Necessity
       For.

    The mode of making a dedication of an easement constituting
an alley way over part of a city block, is immaterial.   Neither
a written grant nor any particular words or ceremonies or form
of conveyance is necessary to render the act of dedicating land
to public uses effectual.   It is sufficient if the owner's inten-
tion and express act coincides.   The rule is that dedication may
be made either with or without writing, by any act of the
owner, such as throwing open his land to public travel, thereby
indicating a clear intention to dedicate, or by an acquiescence
in the use of his land, or by his declared assent to such use;
and the statute of frauds does not apply to such dedications.
Held, further, that dedication may be accepted merely by long
continued public user without formal act of acceptance; and a
use which would naturally follow from the character of the
place and the settlement of the community is sufficient.

7.  Same—Alleyway, Dedication, Manner of, Immateriality—Ques-
       tion of Fact.

    The owner's intention to dedicate an easement as an alley
way over part of a city block, is a necessary element in every
case, and is purely a question of fact; and when his intention
to dedicate is manifest by his agreement, the manner of making
the dedication is immaterial, the only necessity being the own-

er's purpose to dedicate the land to public use.

Appeal from Circuit Court, Lincoln County. Hon. JOSEPH W. JONES, Judge.

Action by William H. Miller, Jr., against Emily Southard and C. B. Kennedy, to permanently enjoin defendants from interfering with or obstructing a right of way easement. From a judgment for plaintiff and from an order denying a new trial, defendants appeal. Reversed, and remanded for further proceedings.

C. B. Kennedy, for Appellants.

Aikens & Judge, for Respondent:

(1) To point one of the opinion, Appellants cited: Cartwright v. Maplesden, (N. Y.) 53 N. Y. 622; Civ. Code, Sec. 277.

(3) To point three of the opinion, Appellants cited: Boston & P. R. Corp et al. v. Dougherty, (Mass.) 28 N. E. 277; Rowe v. Stevens, 53 N. Y. 621; Snell v. Levitt, (N. Y. 18 N. E. 370.

(4) To point four of the opinion, Appellants cited: Myers v. Berven, (Cal.) 137 Pac. 260.

(6) To point six of the opinion, Appellant cited: Civ. Code, Secs. 1238, 488, 922, 938; Spawn v. South Dakota Ry. Co., (S. D.) 127 N. W. 648.

Respondent cited: Howes v. Barman (Idaho) 81 Pac. 48, 114 A. S. R. 258; Civ. Code, Secs. 938, 1238, 1239, 1287.

(7) To point seven of the opinion, Respondent cited: King v. Murphy, (Mass.) 4 N. E. 566; Yates v. Town of Warrenton, 84 Va. 337, 10 A. S. R. 860.

McCOY, J. This suit was instituted to forever restrain and enjoin defendants from in any manner interfering with or obstructing the free use and enjoyment by plaintiff of a certain alleged private alley, or right of way easement, 10 feet wide and 132½ feet long, extending westward from the north end of a certain parcel or lot of land owned by plaintiff in block 13, city of Canton, to the street on the west side of said block. Findings and judgment were in favor of plaintiff, and defendants appeal.

The defendants duly excepted to all the findings in favor of plaintiff. Among others, the court made the finding that defend-

ant Kennedy has, without any right, consent, or authority, excavated. the ground in said right of way or easement, thereby rendering the same impassable, and has also, during the pendency of this suit, above said excavation and upon walls, constructed thereon a building intended for and used as an opera house, which permanently obstructs and renders useless such right of way or easement. The judgment requires said defendant to remove said opera house from said right of way, or that he build an archway under said building sufficient to permit of free and unobstructed passage of vehicles through and upon said right of way. The defendants proposed the following finding, which was by the trial court refused:

"That on or about the 1st day of February, A. D. 1883, the plaintiff's predecessor in interest, William H. Miller, Sr., made an agreement with Emily Southard and G. A. Nelson by which he abandoned the alley in question and described in his deed set out in his complaint in consideration of being given a right of way out north to Fourth street and west to Cedar street, 22 feet further north."

The defendants, appellants, now assign as error the making of said finding in favor of plaintiff and the refusal of said finding proposed by defendants. It is contended by appellants that the undisputed evidence conclusively shows an abandonment of the right of way in question by William H. Miller, Sr., the former plaintiff in this action and former owner of said right of way. This is the vital question upon the merits of this appeal.

This action was originally commenced by William H. Miller, Sr., who died pending suit; the present plaintiff, William H. Miller, Jr., a son, successor in interest of the right of way in question, by devise, subsequently became a party by substitution. The present plaintiff has no greater right in the premises than had his predecessor in interest, the original plaintiff. There is no material conflict in the testimony upon the proposition of the abandonment of said right of way by said Miller, Sr. The following plat of said block 13 shows the location of plaintiff's lot and the lots of defendants, and the right of way in question, and

31—Vol. 38, S. D.

the location of the other rights of way material to the controversy at the time of the alleged abandonment of the alleyway in question:

On August 26, 1880, Mrs. Southard, by deed, conveyed to William H. Miller, Sr., the said lot now owned by respondent, and the 10-foot wide right of way in question. Subsequently, in the years 1882 and 1883, the matter of establishing other alleyways, in place of the alleyway in question, so deeded to Miller, was under consideration by the owners of lots in said block 13. At the time of the consideration of the change of alleyways, the Southards, Miller, Nelson, Mrs. Holsey, and her father, Benedict, were lot owners in said block. The proposition was raised that the alleyway deeded to Miller was too narrow for practical use. One Holsey, being called as a witness, testified that he had lived in Canton 47 years; that he attended to the business of his wife and Benedict in the matter of the laying out of the two new alleyways in 1882 and 1883; that Miller had bought a lot from Southards, and Southards were trying to sell to Nelson, and the question was raised that the alleyway in dispute was too narrow, that they met in Southard's office, and it was agreed that a 16-foot wide alleyway out to the street north from the Miller lot would be a better outlet, and Miller said he would accept that

permanently in place of the other; that Nelson also wanted a way out west. In pursuance of this oral agreement, the lot owners on either side of this proposed 16-foot wide alleyway, running north and south, made deeds for alleyway uses and purposes; those on the west side of the alley conveying 8 feet wide on the east end of their lots, and those on the east side of the alley conveying 8 feet wide on the west end of their lots. These deeds conveyed lands on both sides of the center of the 16-foot wide alleyway from the street north of said block as far south as the north line of the Nelson lot designated on the foregoing plat. These said deeds, it will be observed lacked 10 feet of extending the 16-foot wide alleyway to the north end of the Miller lot. Nelson and the Southards were then the owners of the 8x10 feet parcels of land lying between the north end of the Miller lot and the south end of the 16-foot wide alleyway as created by said deeds.

The witness Holsey further testified that, after the making of said deeds, it was arranged that Nelson and Southard should complete the end of the extension of the 16-foot wide alleyway until it came to the Miller lot. In 1882, a deed was also executed by the lot owner as grantor to other lot owners in said block as grantees for alley purpose, 12 feet wide running east and west on the north side of lot 7 from the 16-foot wide alley to the street on the west side of said block. It further appears from the evidence that after the agreement to substitute the 16-foot wide, north and south, alleyway in place of the alleyway in question, the Southards fenced up and closed the 10-foot wide alleyway in dispute by erecting fences and building across the same, and planted trees thereon; that such fences and structures remained thereon until destroyed by fire in 1888; and that, much of the time since 1888 to the time of the commencement of this action, the said right of way in dispute has been obstructed by fences and other obstructions, and that at no time since 1883, until the commencement of this action, had Miller, Sr., ever used said right of way or objected to the obstruction thereof by the Southards or any other person. It also further appears that the new alleyways created in 1882 and 1883 have ever since their creation been used as alleyways by the public, and by the occupants of that block, including Miller, Sr., and by all others who desired to use the same.

[1-4] The foregoing facts are not substantially disputed. We are of the opinion that these facts conclusively show that Miller, Sr., under an express agreement so to do, intentionally abandoned the 10-foot wide alleyway in question, and accepted in lieu thereof, as a consideration for such abandonment, the use of the 16-foot wide alleyway created in 1883. The easement here involved was one created by express grant. It was, however, an easement only. Plaintiff, or his predecessor, at no time had title to the soil over which this easement attached. · Plaintiff's only interest under his grant was a right of way. It seems to be universally held that a party entitled to a right of way easement in the land of another may abandon and relinquish such right by acts in pais, and without deed or other instrument in writing. To show this there must be acts of the owner showing an intent, either express or implied, to abandon. Mere nonuser, however, long, will not amount to abandonment. The mere user of a new right of way will not constitute abandonment without express or implied intention to abandon. But where, as in the case at bar, we have nonuser of the old right of way and user of the new, with express agreement, as well as implied intention, to abandon the old way and accept the new in place thereof, it must be held to extinguish the prior easement. 14 Cyc. 1185-1187; Fitzpatrick v. Boston Ry. Co., 84 Me. 33, 24 Atl. 432; Talbbutt v. Grant, 94 Me. 371, 47 Atl. 899; Suydam v. Dunton, 84 Hun, 509, 32 N. Y. Supp. 333; Smith v. Worn, 93 Cal. 206, 28 Pac. 944; King v. Murphy, 140 Mass. 254, 4 N. E. 566; Weaver v. Getz, 16 Pa. Super. Ct. 418; Welsh v. Taylor, 134 N. Y. 450, 31 N. E. 896, 18 L. R. A. 535; Boston v. Doherty, 154 Mass. 314, 28 N. E. 277; People v. Gloversville, 128 App. Div. 44, 112 N. Y. Supp. 387; Henderson v. Carroll Elec. Co., 113 App. Div. 775, 99 N. Y. Supp. 365; Jamaica Pond Aqueduct Corp. v. Chandler, 121 Mass. 3. The undisputed testimony of Holsey shows an express agreement and an express intention on the part of Miller, Sr., to permanently abandon the right of way in dispute in consideration of the new alleyway created in 1883. There are many circumstances in this case showing abandonment by implication, which serve to corroborate the express agreement to abandon upon which the decision in the case must be based. The declarations of the former owner of the dominant

estate, made during his ownership, were admissible to show an abandonment of the easement to the right of way in question. King v. Murphy, supra.

[5, 6] It is contended by respondent that the establishment of the new alleyways was of no value to him, in that the back of his property was left in cul-de-sac by reason of the fact that the deeds granting the easement of the new alleyway only extended southward to the north line of the Nelson lot, as shown on the plat, and thereby only bringing such new alleyway to within 10 feet of the back end of respondent's said lot. We are of the view that this contention is not tenable. We are of the opinion that the evidence conclusively shows that the Southards and Nelson dedicated to public use for the purposes of said new alleyways the 8x10 feet parcels of ground respectively owned by them lying between respondent's lot and the new north and south 16-foot wide alleyway as created by said deeds. In 1882 and 1883, at the time the establishment of these new alleyways was under consideration, Nelson, Miller, and Southards were the principal interested parties, as lot owners, who directly participated in the establishment of the new alleyways connecting with the end of the Miller lot. At that time the Southards were the owners of the lot 7, shown on the plat, and also a number of other lots in said block. At that time, in 1882 and 1883, Nelson was the owner of a lot in the east half of said block, which extended east and west about the middle of the block, the west end of which adjoined the back end of the Miller lot, as shown on the plat; Nelson then also owned the second lot west of the Miller lot; and Nelson was then trying to purchase from Southards the first lot east of the Miller lot. It was Nelson and Miller who, in 1882 and 1883, raised the question of getting out the backway. It was then claimed that the alleyway theretofore, in 1880, deeded to Miller, was too narrow for practical use; that they had to back in and back out. Nelson desired an alleyway out to the west side of the block. It was to satisfy this desire of Nelson that the Southards caused and procured the deed to be made for alley purposes on the north side of lot 7, running from the east end of said lot west to Cedar street. Afterwards, as a part of the same plan of getting out the backway, the deeds to the 16-foot wide north and south alleyway were made extending

south to the line of the Nelson lot. Now it was impossible for Nelson to get from his lot in the east half of the block, or from the lot he was trying to purchase from Southards, without using the 8x10 feet piece of ground owned by him as a part of the north and south alley. Holsey testified:

"While I was there, Nelson and Miller came into Dr. Southard's office, and that alley was extended with Nelson's consent further down south until it came to Miller's lot on the north side of Miller's lot. I am speaking of the north and south alley. It was then agreed—the converastion was that the alley would give a better outlet than the other, and more room. After we had made the deed, it was arranged that Southard and Nelson complete the end of the extension of the alley. It was conceded and admitted that Miller had the right to go out north and south. He said that would be better for him and that he would accept that in place of the other permanently."

This undisputed testimony clearly shows dedication by Southard and Nelson by agreement with Miller.

"The mode of making a dedication is immaterial. Neither a written grant nor any particular words or ceremonies, or form of conveyance, is necessary to render the act of dedicating land to public uses effectual. Anything which fully demonstrates the intention of the donor, and the acceptance by the public, works the effect. Even words are unnecessary if the intent can be gathered from other sources. It is sufficient if the owner's intention and express act coincide; then dedication will be effectual immediately on its acceptance by the public. Stated generally, therefore, the rule is that dedication may be made either with or without writing by any act of the owner, such as throwing open his land to public travel, * * * thereby indicating a clear intention to dedicate, or by an acquiescence in the use of his land, or his declared assent to such use. * * * Since the statute of frauds does not apply to dedications, an offer or tender of dedication, valid and binding if duly accepted, may be made by acts and parol dedication, or an inference thereof, either prima facie or conclusive, as the case may be, may arise from the circumstances, and this without reference to any particular lapse of time. In such cases, the owner's intention to dedicate is manifested either by his affirmative acts whereby the public use is

invited and his subsequent acquiescence in such use, or by his express assent to the use. * * * The cases are not in accord as to the effect of general use by members of the public as constituting acceptance. But it may safely be stated that the weight of authority is to the effect that acceptance may be predicated on user. And the general current of modern authorities sustains the proposition that dedication may be accepted merely by long-continued public user, without any formal act of acceptance, even to the extent of charging the public authorities with liability for failure to keep in repair. This is declared by some courts to be the very highest kind of evidence of acceptance. * * * There is no established standard by which the use necessary to determine an acceptance by the public may be measured and declared to be sufficient, but the authorities are in agreement to the effect that a use which would naturally follow from the character of the place and the settlement of the community is sufficient." 8 Ruling Case Law, pp. 889, 890, 891, 892, 900, and 901.

[7] According to the testimony of Holsey, which stands undenied, Nelson and Southards expressly agreed and assented to the use of the 8x10 feet parcels of land for alley purposes to complete the extension of the 16-foot wide alleyway to the Miller lot, thus showing an express intention on the part of the Nelson and Southards to so dedicate the same. Nelson was one of the persons who took part in the creation and establishment of the 16-foot wide alleyway from the Miller lot north to Fourth street. In the case of Jockimsen v. Johnson, 173 Iowa, 553, 156 N. W. 21, it is held that the owner's intent to dedicate is a necessary element in every case and is purely a question of fact, and that when his intent to dedicate is manifested by his agreement the manner of making the dedication becomes immaterial; the only necessity being the owner's purpose to dedicate the land to public use. A written agreement to dedicate not being necessary, every element of the case at bar is sustained by this last-cited decision. It appears from the record that the new alleyways in question have been used by the public as such for more than 30 years. Naturally, alleyways such as those involved in this case are not used by any great numbers of public users, but most generally by only the residents of the block, and a few others, who may be transacting business with or for persons who reside

in the block. It appears that most, if not all, of the residents and natural public users of the alleys in question, were parties to the creation of said two new alleyways, and that said persons thereafter used the same for such purposes.

We are of the view, and therefore hold, that the court erred in making the finding that the defendant Kennedy has without right or authority obseructed the alleyway in question, and that the court also erred in refusing to find that the plaintiff's predecessor had abandoned the said 10-foot wide right of way in question.

The judgment and order appealed from are reversed and remanded for further procedure in accord with this decision.

SMITH, J., Concurs in result.

GATES, P. J., (dissenting). The majority opinion says: "That Miller, Sr., under an express agreement so to do, intentionally abandoned the 10-foot wide alleyway in question, and accepted in lieu thereof as a consideration for such abandonment the use of the 16-foot wide alleyway created in 1883."

The majority opinion further says:

"The undisputed testimony of Holsey shows an express agreement and an express intention on the part of Miller, Sr., to permanently abandon the right of way in dispute in consideration of the new alleyway created in 1883."

I cannot let such glaring misconception of the record go unchallenged. It is true that in his direct examination Mr. Holsey testified (28 years after the event and referring to the north and south alley) as follows:

"Q. What did Mr. Miller say about that alley? A. He said that would be better for him and that he would accept that in place of the other permanently."

However, upon cross-examination the following occurred:

"Q. I am talking about the talk to Maj. Miller. It was represented to Miller, you say, that this 16-foot alley was to go clear down to his lot? A. Yes, sir. Q. The whole width of it, the 16 feet? A. Yes, sir; 16 feet down to the north end of his lot; yes, sir. Q. Sure? A. Yes, sir. Q. And if it did do that he was perfectly satisfied? A. He expressed himself that way. Q. You say that this 16-foot alley was to run down to Maj.

Miller's north line?   A. Yes, sir.   Q. The full width?   We want to fix that fact certain.   A. Yes, sir."

I therefore insist that the evidence does not warrant the statements in the majority opinion.   The only statement that would be warranted would be that Miller agreed to give up the alley in dispute provided the north and south alley was brought down to his property.   That was never done.   There is no pretense that it was ever done.   Why was it not done?

Mr. Holsey testified:

"This was the time that Nelson was going to buy the lot next east of Miller's if I understood it.   He was going to purchase the lot of Dr. Southard.   Nelson bought lots from me on Main street, an entirely different lot."

Does not this show the reason why Nelson decided not to allow the alley to extend across the 8x10 tract owned by him and which was necessary to bring the alley to its full width down to Miller's north line?

Another fact should be observed, viz. that this conversation that Holsey testified to was after the deed dedicating the north and south alley down to Nelson's north line had been made, and such deed did not recognize Miller as one of the beneficiaries. This alley was strictly a private alley.   Its beneficiaries were:

"G. A. Nelson, Emily Southard, Mary Colony, E. M. Wells, A. H. Mallory, Emma J. Holsey, Lydia Gillen, and E. Wendt, and any or all parties owning land adjoining or lying upon said alley as herein described."

Can it be fairly asserted that this deed would have given Miller the right to use that alley, even if it had been brought to its full width down to Miller's north line?   In the attempt to show a verbal modification of this deed, Mr. Holsey was asked this question:

"Q. Was there anything said in that conversation about Miller having the right to go out north and west?   A. That was conceded and admitted."

It seems to me that it is not for this court to overturn the decision of the trial court and modify deeds and establish and vacate easements on the strength of such inconclusive testimony as above detailed.

If there was no executed agreement to abandon, all that is said in the opinion about abandonment is beside the question. The discussion in the opinion about the east and west alley, 22 feet north of the one in dispute, which was dedicated in 1882, has no bearing upon the rights of Miller. Miller, Sr., had nothing to do with that alley whatever.

Construing the evidence most favorably to appellant, all that it tends to show is nonuser, but not abandonment. The alley was a public alley, and the right to the use thereof ran with the land, so that evidence of nonuser is not evidence of abandonment. The fire of 1888 destroyed all buildings north of Miller's store, and no regard was thereafter paid to lot lines in the matter of ingress to and egress from the back of the store.

The defendant Southard testified to the abandonment of the alley since 1883, but her own acts contradicted her testimony. In April, 1884, she deeded the third lot west of Miller's to Shields to a depth of 98 feet from Fifth street. This would be 22 feet north of the north line of the alley in dispute. In this deed this alley was reserved. In June, 1888, she deeded the lot next west of Miller's to her husband, which included land north of the alley in dispute and in which deed said alley was reserved. Furthermore, tax receipts were offered in evidence for the years 1891, 1900, and 1905, covering her lot in the southeast courner of the block, viz. 49½ feet on Fifth street and 98 feet on Cedar street. In these tax receipts the alley was excepted. All of the later deeds with one exception noted the reservation of the alley.

The defendant Kennedy purchased the land on which he built his opera house, with full knowledge of the existence of the alley. This action was begun while he was making the excavation for the building. During the pendency of the action he erected the opera house. I think he did this with his eyes open and at his peril. The trial court made findings of fact in accordance with my notion of the clear preponderance of the evidence. Its judgment, based thereon, should be affirmed.

WHITING, J. I concur in the above dissent.