1998 SD 91

Mark CLEVELAND, Kandy Cleveland, John Hollmann, Elisabeth Hollmann, Frank Birkholt, Frances Birkholt, and Keith Blessing, Plaintiffs and Appellees,

v.

J. Dean TINAGLIA and Madonna Tinaglia, Defendants and Appellants,

and

Michael P. Ortner and Carl F. Oberlitner, Defendants and Appellees.

Nos. 20183, 20191.

Supreme Court of South Dakota.

Considered on Briefs April 28, 1998.

Decided Aug. 12, 1998.

Rehearing Denied Sept. 14, 1998.

Todd D. Hauge of Bakewell, Hauge & Vander Heide, Custer, for defendants and appellants.

Patrick M. Ginsbach of Farrell, Farrell & Ginsbach, Hot Springs, for plaintiffs and appellees.

Michael P. Ortner, Hot Springs, for defendants and appellees.

AMUNDSON, Justice.

[¶ 1.] Mark and Kandy Cleveland, brought a declaratory judgment action against J. Dean Tinaglia and Ladonna Tinaglia to determine, among other things, the extent and location of easements over Clevelands' property. The circuit court determined the existence and width of the easements with reference to the time of their creation. Tinaglias appeal. We affirm.

## FACTS

[¶ 2.] Tinaglias own approximately 3,000 acres of land in Fall River County, South Dakota. This property lies south of Highway 18–385 and the Fall River. To travel from Highway 18–385 to their property, Ti-naglias must cross property owned by various other parties. This declaratory judgment action was instituted by some of the landowners who own property that Tinaglias cross while traveling to different parts of the 3,000 acres they own. These landowners include Mark and Kandy Cleveland, John and Elizabeth Hollman, Keith Blessing, and Frank and Frances Birkholt (collectively referred to as Landowners).*

[¶ 3.] This dispute involves the existence, extent, and location of certain easements in favor of Tinaglias. The first is referred to as the main route to the Tinaglia residence (Main Route). This crosses the southeast corner of Clevelands' property and is the primary route to Tinaglias' residence. The Main Route is a narrow, dirt road with no apparent improvements such as asphalt, gravel, chip and seal, etc. The history of the use of the road, as shown by the evidence, reveals that the road supports essentially a single lane of travel.

[¶ 4.] The second disputed easement involves what is referred to as Brady Canyon Road. Brady Canyon Road cuts across the northeast part of Clevelands' property and serves to allow Tinaglias access to a part of their ranch property known as Brady Canyon. It is more or less a trail with grass growing up in the middle of two vehicle tracks.

[¶ 5.] The third disputed easement concerns what is referred to as the Cut Across Road. This road traverses the northwest and center of Clevelands' property and serves to connect the Main Route to Brady Canyon Road. The Cut Across Road originally served to shorten the travel time for Tinaglias to get from the Main Route to Brady Canyon.

[¶ 6.] The fourth disputed easement area concerns what is referred to as the Hagen Route. The Hagen Route crosses property owned by Keith Blessing that he tentatively agreed to sell to Birkholt and Hollman. The Hagen Route was originally used by Tinagli-as to reach their property, as it contained the

---

* The Birkholts are interested parties to this action because they entered into a purchase agreement to purchase certain property owned by Blessing.

only bridge over the Fall River, which lies between Highway 18–385 and their property.

[¶ 7.] The fifth disputed issue involves what is known as the Ittzes/Mower Route. This road was the subject of a previous lawsuit that established it as a public road. *Tinaglia v. Ittzes*, 257 N.W.2d 724 (S.D.1977). Part of the Ittzes/Mower Route is used to connect Highway 18–385 to the Main Route to Tinaglias' property. This road has been improved. A culvert type bridge was installed sometime around 1981 that connects this part of the Ittzes/Mower Route with the Main Route. Previous to this, Tinaglias had to use the culvert bridge on the Hagen Route to cross the Fall River. However, Tinaglias preferred to use the more direct Ittzes/Mower Route and the new culvert bridge after its installation around 1981. The Hagen Route's culvert bridge washed out in 1983 and has not been replaced.

[¶ 8.] Another disputed issue involves the alleged existence of an easement over what is known as Church Road. Church Road is on Clevelands' property and travels south from Cut Across Road to Tinaglias' property. It is used by Tinaglias to maintain fence at an isolated area of their property.

[¶ 9.] At one time, all the property that is involved in this action was owned by Alvin and Marion Katt. Katts sold part of their holdings to Tinaglias in 1972, which consisted of all or part of sections 1, 5, 6, 31, and 36, of Township 7 South, Range 6 East of the Black Hills Meridian, Fall River County, South Dakota (hereinafter Tinaglias' property). Two warranty deeds conveyed the property from Katts to Tinaglias. The first, on July 20, 1972, deeded three different five-acre tracts with easements and rights-of-way. Then, on November 2, 1972, Katts deeded the balance of the approximately 3,000 acres to Tinaglias.

[¶ 10.] The November 2, 1972, deed describes "some" of the roadways and easements, including the Hagen Route, Ittzes/Mower Route and two roads which connect the Hagen Route and the Ittzes/Mower Route. Beyond the descriptions of a few of these roads, the deed of November 2, 1972, as well as the deed of July 20, 1972, purport to give "the right of ingress and egress to the real estate hereby conveyed through and over existing trails and roadways." These deeds did not establish any specific width for any of the easements.

[¶ 11.] Katts also granted Tinaglias an easement executed May 28, 1974, for the purpose of putting in the new bridge and road that would connect the Ittzes/Mower Route to the Main Route to Tinaglias' property. This new bridge allowed Tinaglias to travel a more direct route to their property than that offered by the Hagen Route. This 1974 easement also did not specify any width, but it did recite the easement granted in the previous deeds as being "over and across existing trails and roads."

[¶ 12.] Originally, Michael P. Ortner and Carl F. Oberlitner were also involved as plaintiffs in this action, but they reached settlement with Tinaglias and became defendants as well. As part of the settlement, Ortner and Oberlitner granted a sixty-six-foot wide easement to Tinaglias over part of the Main Route to Tinaglias' house. This easement adjoins Clevelands' property. However, Clevelands mistakenly placed a portable shed, electrical pedestal, and fenceline on Ortner and Oberlitner's property and within the easement granted to Tinaglias. As a result, Ortner and Oberlitner were joined as defendants regarding the placement of these improvements.

[¶ 13.] This matter was tried to the court, which, after viewing the premises, entered judgment limiting the width of the Main Route to fifteen feet, limiting the width of Brady Canyon Road to ten feet, limiting the width of the Cut Across Road to ten feet, and limiting the width and use of the Church Road to eight feet only for fence repair. The court made its decision based on the existence and width of the roadways at the time of the creation of the easements. The trial court further determined that Tinaglias had abandoned the Hagen Route and enjoined them from traveling over that roadway. The court's judgment also provided that Tinaglias were enjoined from widening the easement for the Ittzes/Mower Route. Additional facts will be noted when they become relevant.

[¶ 14.] Tinaglias appeal, asserting the following issues:

1. Whether easements granted by warranty deeds in 1972 are limited to the roadway width as it existed in 1972.

2. Whether the easement known as the Hagen Route was established by grant, implication, or by prescription and, if so, has the Hagen Route been abandoned.

3. Whether the public easement known as the Ittzes/Mower Route was limited to its hard surface width?

4. Whether the easements located in the southeast quarter of the northwest quarter of section 32 were established by plat, grant, implication or prescription and, if so, whether any of said easements have been abandoned.

5. Whether Clevelands constructed improvements off of their premises and, if so, whether the improvements should be removed.

6. Whether Landowners should be restrained from obstructing, impeding, or interfering with Tinaglias' free and open use, repair, and improvement of easements and roadways.

[¶ 15.] By notice of review, Landowners bring the following issue for our review:

1. Whether the trial court erred in determining that Tinaglias were entitled to an easement for Brady Canyon Road, Cut Across Road, and Church Road.

## STANDARD OF REVIEW

[¶ 16.] "We have held that a trial court's findings of fact will not be disturbed unless they are clearly erroneous." *Fanning v. Iversen,* 535 N.W.2d 770, 773 (S.D.1995) (quoting *Knudsen v. Jensen,* 521 N.W.2d 415, 418 (S.D.1994)). Clear error is shown only when, after review of all the evidence, "we are left with a definite and firm conviction that a mistake has been made." *Id.*(citing *Cordell v. Codington County,* 526 N.W.2d 115, 116 (S.D.1994)). Conclusions of law are reviewed de novo. *Id.* Statutes are interpreted "under a de novo standard of review without deference to the decision of the trial court." In re *Estate of Jetter,* 1997 SD 125, ¶ 10, 570 N.W.2d 26, 28 (citations omitted).

## DECISION

### [¶ 17.] 1. Width of Easements

[¶ 18.] Tinaglias contend that the trial court erred in restricting the width of the easements with reference to the time of their creation in the early 1970s. However, "[t]he extent of an easement is determined by the terms of the grant or by the nature of the enjoyment by which it was acquired." *Travis v. Madden,* 493 N.W.2d 717, 719 (S.D. 1992) (citation omitted). "The terms of the grant, as they can be learned either by words clearly expressed, or by just and sound construction, will regulate and measure the rights of the grantee." *Id.* (quoting *Salmon v. Bradshaw,* 84 S.D. 500, 505–06, 173 N.W.2d 281, 284 (1969)).

[¶ 19.] On July 20, 1972, Katts deeded to Tinaglias certain real estate along with access to the premises as follows:

GRANTORS, for themselves, their heirs, assigns and successors in interest hereby grant unto grantees and their heirs, assigns and successors in interest, and other persons for GRANTEES benefit and advantage, at all times freely the right of ingress and egress to the real estate hereby conveyed *through and over existing trails and roadways.* (Emphasis added.)

In addition, the deed provides that the grantees (Tinaglias) may make improvements and repairs to the roads and trails. Katts conveyed the balance of the 3000 acres to Tinaglias on November 2, 1972, again including a grant for easements *"through and over existing trails and roadways."*

[¶ 20.] Tinaglias point to the contract for deed that was entered into with Katts on March 29, 1972, as evidence of the extent of the easements. This contract provided, in pertinent part, as follows:

Sellers agree to grant to the Buyers the right of ingress and egress to all of the property which is the subject matter of this contract over existing roads and trails and on any future rights-of-way agreed upon by the parties hereto.

Sellers further agree that the ultimate deed of conveyance will contain such easements as are necessary for the Buyers to

utilize the real estate which is the subject matter hereof. . . .

However, Clevelands' reliance on the contract is misplaced. "The general rule is that a deed executed in pursuance of a contract for the conveyances of real property supersedes and merges all prior negotiations or contracts relating to it[.]" *Hammerquist v. Warburton*, 458 N.W.2d 773, 776 (S.D.1990) (citations omitted). As the deeds executed in 1972 supersede the provisions in the contract, the contract provisions are not controlling on any issue in this case.

[¶ 21.] The key language of both warranty deeds rests on the meaning of "through and over existing trails and roadways." This is important, because the parties did not define the widths of any easement in the documents of conveyance. This Court has been confronted with a similar case before when a deed that had been executed to create a right-of-way failed to specify either its width or location. *Graff v. Budgett*, 69 S.D. 364, 10 N.W.2d 764 (1943). The *Graff* opinion affirmed the trial court's determination of the width and location of the right-of-way under the theory it was established by the use and acquiescence in the use of a driveway. *Id.* at 366, 10 N.W.2d at 765.

[¶ 22.] Perhaps even more pertinent is the case of *Travis v. Madden*, 493 N.W.2d 717 (S.D.1992). In *Travis,* this Court addressed the terms of grant for an easement "for ingress and egress to the above described property, *over and upon the roadway presently existing* and situated on the North 58 feet of said Lot 19." *Id.* at 719 (emphasis in original). The Court faced the issue of determining if the easement was fifty-eight feet wide or if it was limited to the roadway then in existence. The Court held that the language setting out the easement as being "over and upon the roadway presently existing" meant that the easement was limited to the use of the roadway and did not extend to the entire fifty-eight feet of land. *Id.*

[¶ 23.] The controlling language in the current case, "through and over existing trails and roadways," is obviously very similar to the language of the easement construed in *Travis.* The trial court's decision limiting the width of the. easements to the roadway

was therefore quite consistent with *Travis.* Furthermore, the width of the road that the trial court set in this case was consistent with the "use and acquiescence in the use" of the road by the parties. *Graff,* 69 S.D. at 366, 10 N.W.2d at 765. Thus, we find the trial court's decision to be consistent with prior precedent and not clearly erroneous.

### [¶ 24.] 2. Existence of Hagen Route and Abandonment

■ [¶ 25.] The trial court entered findings that the Hagen Route is "invalid" as not being properly recorded and indexed; that Blessing was not on notice of easements crossing his property; that Tinaglias have no prescriptive rights over the Hagen Route; and that the Hagen Route has been abandoned.

■ [¶ 26.] Because of our disposition of this issue, we first address the issue of abandonment because if that is established we need not address the other issues. Tinaglias contend that there has been no intentional act or conduct on their part to evidence an intent to abandon the Hagen Route. However, they ignore the uncontested facts. There is no question that Tinaglias have utilized the more direct route provided by the newer culvert bridge that connects the Ittzes/Mower Route to the Main Route to their property, rather than the Hagen Route. "The use of a substituted way may be evidence of abandonment of the original way." *Shippy v. Hollopeter,* 304 N.W.2d 118, 121–22 (S.D. 1981) (citation omitted). Although, this is not conclusive evidence of abandonment because "[t]he mere use of a new right-of-way will not extinguish the old. There must also be an abandonment by non-use of the old right-of-way." *Id.* at 122 (citing *Miller v. Southard,* 38 S.D. 477, 162 N.W. 146 (1917)).

[¶ 27.] However, the record clearly reflects non-use of the Hagen Route. No fact is more telling in this respect than the fact that the culvert bridge on the Hagen Route has been washed out since 1983. Tinaglias have made no effort to rebuild this bridge and have not used the Hagen Route since at least the time the bridge washed out. Back in 1975, during their lawsuit against Ittzes, Ti-

naglias even testified that the Hagen Route was unacceptable because of its ninety-degree turns and poor condition. The evidence also showed that a large tree had fallen across the road, preventing passage, and that the tree had remained there until after this lawsuit began. We hold that the trial court did not err in holding that the record showed an intent to abandon the easement over the Hagen Route. *Miller,* 38 S.D. at 484, 162 N.W. at 148.

### [¶ 28.] 3. Width of the Ittzes/Mower Route

[¶ 29.] As previously mentioned, the Ittzes/Mower Route has been established as dedicated for public use. *Tinaglia,* 257 N.W.2d 724. However, there was no determination in this decision pertaining to the width of the easement. In this case, the trial court determined that the width was limited to the roadway surface. This was the roadway surface that had been established by Dr. Ittzes in 1972, when he paid to have the road chipped and sealed. Tinaglias contend that it was error for the court to find that the easement was limited to the roadway surface and advance the argument that the easement should be sixty-six feet wide.

[¶ 30.] Tinaglias rest their argument on the provisions of SDCL 31–3–1. This statute provides in pertinent part:

> Whenever any road shall have been used, worked and kept in repair as a public highway continuously for twenty years, the same shall be deemed to have been legally located or dedicated to the public, and shall be and remain a public highway until changed or vacated in some manner provided by law.
>
> Such highway shall be sixty-six feet wide[.]

The second paragraph of SDCL 31–3–1 that creates a sixty-six-foot wide easement was enacted in 1985. As such, it does not apply to an easement that was established by the *Tinaglia* decision in 1977 in the absence of legislative intent that the statute apply retroactively. SDCL 2–14–21 (providing "[n]o part of the code of laws ... shall be construed as retroactive unless· such intention plainly appears.").

[¶ 31.] Furthermore, there is no evidence in this record that the county has accepted the Ittzes/Mower Route as a public highway, maintained the road, spent any public funds on the road, or claimed any ownership or control of the road. In fact, the evidence was that Dr. Ittzes paid for the maintenance of the road. Under the circumstances, the trial court did not err in holding SDCL 31–3–1 to be inapplicable to the present case.

### [¶ 32.] 4. Existence of Easements in SE1/4NW1/4 of Section 32

[¶ 33.] The May 28, 1974, easement granted to Tinaglias a right of access over the SE1/4 of the NW1/4 of Section 32. Thus, Tinaglias assert the trial court erred in not finding the roadways contained therein to be public with a width of sixty-six feet. We disagree.

[¶ 34.] Tinaglias' argument falls short of the mark immediately, because of its failure to join Fall River County as a party to this suit. This Court has previously held that in a suit to declare a roadway public, the county is an indispensable party. *Smith v. Albrecht,* 361 N.W.2d 626, 628 (S.D.1985). As such, the trial court's determination that it was without jurisdiction to declare the road open to the public was not error.

### [¶ 35.] 5. Clevelands' Improvements Placed on Ortner Property

[¶ 36.] Clevelands mistakenly placed an electrical pedestal, fence and portable shed on property owned by Ortner and Oberlitner. These improvements were also placed within the boundaries of a sixty-six-foot wide easement granted to Tinaglias by Ortner and Oberlitner.

[¶ 37.] Clevelands argue that Ortner, Oberlitner, and Tinaglias should be estopped from any right to have those improvements removed because of the acts and conduct of Ortner and Oberlitner. Clevelands contend that Ortner or one of his agents pointed out the direction of the location of the boundary between their respective property lines and that Clevelands relied on the representation when locating their improvements.

[¶ 38.] Equitable estoppel consists of four elements:

1. False representations or concealment of material facts must exist; and

2. The party to whom it was made must have been without knowledge of the real facts; and

3. That representations or concealment must have been made with the intention that it should be acted upon; and

4. The party to whom it was made must have relied thereon to his prejudice or injury.

*Cromwell v. Hosbrook*, 81 S.D. 324, 329, 134 N.W.2d 777, 780–81 (1965) (citations omitted); *accord Crouse v. Crouse*, 1996 SD 95, ¶ 14, 552 N.W.2d 413, 417 (citations omitted).

[¶ 39.] It is readily apparent that Clevelands' claim for estoppel is without merit. At the very least, Clevelands have failed to produce any evidence that Ortner or his agent expected a casual gesture in the direction of the boundary to be relied on or acted upon by Cleveland. Thus, an essential element of Clevelands' claim for equitable estoppel is lacking. *Century 21 Associated Realty v. Hoffman*, 503 N.W.2d 861, 866 (S.D.1993). The trial court, therefore, did not err in its determination that Clevelands did not have a proper claim for equitable estoppel.

### [¶ 40.] 6. Denial of Tinaglias' Request for Injunction

[¶ 41.] Tinaglias have appealed the denial of their request for injunction to restrain Landowners from obstructing, interfering, or impeding with their use, repair, and improvement of the easements and roadways.

[¶ 42.] There was conflicting evidence as to whether there were obstructions or attempts to prevent Tinaglias' use of the easements. "The credibility of witnesses, the weight to be accorded their testimony, and the weight of evidence is left to the factfinder." *Eide v. Oldham–Ramona School Dist. No. 39–5*, 516 N.W.2d 322, 324 (S.D.1994) (citing *Insurance Agents, Inc. v. Zimmerman*, 381 N.W.2d 218 (S.D.1986)). Conflicts in the evidence are resolved in favor of the trier of fact. *Id.* (citing *Century 21 v. Hoffman*, 503 N.W.2d 861 (S.D.1993)). Our review of this record shows that the trial court was required to make credibility determinations on this issue. The trial court's decision to deny injunctive relief is supported by the record and is not clearly erroneous.

[¶ 43.] We have considered the remaining arguments for reversal and find them to be without merit.

[¶ 44.] Affirmed.

[¶ 45.] MILLER, C.J., SABERS, KONENKAMP, and GILBERTSON, JJ., concur.