2003 SD 35

Kenneth R. HOFMEISTER, Mary Lou Hofmeister, Scott Dunham, John L. Overby, Katherine M. Overby, Thomas F. Overby, Kaye Overby, Frederick R. Heigold and Cynthia J. Heigold, Plaintiffs and Appellees,

v.

Gary L. SPARKS, Defendant and Appellant.

No. 22480.

Supreme Court of South Dakota.

Considered on Briefs Feb. 10, 2003.

Decided April 9, 2003.

Brad P. Gordon, A.P. Fuller of Fuller, Tellinghuisen, Gordon & Percy, Lead, South Dakota, Attorneys for plaintiffs and appellees.

Reed C. Richards, Deadwood, South Dakota, Attorney for defendant and appellant.

ZINTER, Justice.

[¶ 1.] Kenneth and Mary Lou Hofmeister; Scott Dunham; John, Katherine, Thomas and Kaye Overby; and, Frederick and Cynthia Heigold (collectively referred to as Hofmeister), own land in a subdivision in the Black Hills. Their property rights include a platted "66′ access easement" across two other parcels of land. The easement gives them access from their land to Nemo Road, a public highway. Gary Sparks, a landowner upon which a portion of the access easement lies, placed a gate across the easement. Sparks contended that the easement was no longer valid. Hofmeister thereafter commenced a declaratory judgment action against Sparks to ascertain the legal status of the easement. The circuit court held that the easement was a public road, or in the alternative, a private access easement that had not been vacated or extinguished.

Sparks appeals. We affirm the circuit court's holding that a private access easement exists, and that it has not been extinguished or abandoned.

## LAND DESCRIPTIONS

[¶ 2.] This appeal involves three parcels of land that have been platted, and in some cases, replatted. All three parcels were at one time owned by Jacob and Nadine Raskob, and are connected by the 66′ platted access easement. (See attachment). Gary Sparks acquired some or all of the three parcels and subsequently conveyed some portions of the property to others, including Hofmeister. The two servient tenements are called HES 537 and HES 417. The dominant tenement is called Hailstorm. A more specific description follows.

### HES 537

[¶ 3.] HES 537 lies adjacent to, and just south of Nemo Road. In 1976, Raskob filed a plat, which described the 66′ access easement through HES 537. This easement created access from Nemo Road across Lot A of HES 537, and then to HES 417. In 1977[1] Raskob subdivided HES 537, changing its description from "Lot A" to Lots 3 through 9. The new plat for this subdivision included the 66′ access easement, which was identical to the easement created in the 1976 plat. In 1977, Raskob deeded Lot 8 of HES 537 to Sparks.[2]

### HES 417

[¶ 4.] The south side of HES 537 borders the northeast portion of HES 417. The 66′ easement continues from HES 537 through HES 417, and gives HES 417 access to Nemo Road, by way of HES 537. Sparks bought HES 417 in 1983. Sparks platted "Lot 2" of HES 417, and sold that lot to Bill Jacobson. Although that plat of Lot 2 does not specifically describe the access easement, the plat did not vacate any prior plats, including the plat that created the 66′ access easement across HES 417. The portion of the easement that lies on HES 417 is the subject of this appeal.

### Hailstorm

[¶ 5.] Hailstorm (Lots 2, 3, and 4), lies south of HES 417, but this property is separated from HES 417 by a 400 foot strip of Forest Service land. Hailstorm was given ingress and egress to Nemo Road by first crossing the Forest Service land, and then by use of the easement across HES 417 and HES 537.

[¶ 6.] Sparks purchased Hailstorm from Raskob in 1976. At that time, Sparks re-platted it into a single tract, referred to as "Tract A" (Hailstorm). Sparks sold this parcel in 1978. Hailstorm was sold again in 1990, and by several other conveyances, the lots in Hailstorm were ultimately transferred to the Hofmeister party plaintiffs. Significantly, all the transfers of Hailstorm property that occurred after Sparks' ownership included the 66′ access easement.

## FACTS[3] AND PROCEDURAL HISTORY

[¶ 7.] At some point prior to this action, a dispute over the access easement devel-

---

**1.** Although the stipulated facts and the Judge's findings of facts list this date as 1997, it is clear from the deed that the actual date is 1977.

**2.** Raskob also deeded Lots 4–7 and 9 to David Sparks in 1977. David Sparks contracted to sell his HES 537 lots to Gary Sparks in 1999; however, that sale has not yet been completed.

**3.** In the statement of facts portion of Sparks's brief, Sparks's counsel recites four "facts" that were offered as being material to the disposition of this case. However, those

oped between Hofmeister and Sparks. Part of the dispute developed when Sparks sent a letter to Jacobson and Hofmeister suggesting improvements to the access easement. Hofmeister responded by letter to Sparks indicating that Hofmeister had obtained a lower estimate for the improvements. The letter also indicated that Hofmeister would be willing to pay $1,000 of the cost of the improvements if Sparks and Jacobson would split the remaining $1,725. Sparks ended this discussion by a letter claiming there was no easement from Hailstorm across HES 417. Sparks's final letter also stated that "[w]e don't expect to see you on the road." Additionally, at some point prior to this action, Sparks placed a gate across the access easement at the point where the easement over HES 417 and the 400 foot strip of forest service land connect. Without the easement across HES 417, that particular access route from Hailstorm across HES 537 to Nemo Road was unavailable.

[¶ 8.] The owners of Hailstorm subsequently commenced this action to establish the existence of the access easement. They also sought to order Sparks to reopen the road. The circuit court decided the case on stipulated facts. The court held that the access easement was a public road, or in the alternative, a private easement that had not been extinguished or abandoned.

[¶ 9.] Sparks appeals raising four issues.

1. **Whether the access easement was a dedicated public road.**

2. **Whether the access easement was abandoned.**

3. **Whether the access easement was extinguished by prescription.**

4. **Whether the access easement was extinguished when Sparks owned both the dominant and the servient tenements.**

## STANDARD OF REVIEW

[¶ 10.] This is a declaratory judgment action submitted upon stipulated facts. In declaratory judgment actions, this Court "has an obligation to reach its legal conclusions independent from the conclusions reached by the trial court." *City of Rapid City v. Anderson*, 2000 SD 77, ¶ 6, 612 N.W.2d 289, 291 (internal citations omitted).

statements of fact were not accompanied by a reference to the record where the alleged facts appear as required by SDCL 15–26A–60(5). Consequently, Hofmeister vigorously disputed those facts and claimed that they were not in the record. In his reply brief, counsel for Sparks responded by claiming that the disputed facts were in the record, and for the first time provided this Court with citations to the record.

However, counsel's citations to the record reveal that none of these "facts" were offered or received as evidentiary facts before the trial court. On the contrary, each alleged fact is only an assertion found in one of Sparks's trial court pleadings (the answer, counterclaim, motion for summary judgment, proposed findings of fact and conclusions of law, motion for a new trial, or Sparks's affidavits

filed with those pleadings). Because these pleaded assertions relate to issues on the merits (as opposed to procedural disputes relating to those pleadings) we find that counsel's initial recitation of such "facts" was not stated fairly, with complete candor to this Court as required by SDCL 15–26A–60(5).

We take this opportunity to advise appellate practitioners that all material facts must contain a reference to the record. *Id.* Moreover, absent an issue on appeal which makes a party's assertion in a pleading relevant, the statement of facts required in appellate briefing should not recite as evidentiary facts, mere assertions from that party's pleadings. Sparks's counsel's use of assertions in pleadings as evidentiary facts in his opening brief was misleading to opposing counsel and this Court.

## DECISION

### 1. The access easement was not a dedicated public road.

[¶ 11.] At the time this case was decided, the parties did not have the benefit of our decision in *Selway Homeowners Association v. Cummings*, 2003 SD 11, 657 N.W.2d 307. *Selway* reiterates the requirements for the dedication and acceptance of a platted public road. Like *Selway*, the plats here do not contain the necessary words of dedication of a public road. Furthermore, without such a dedication, Lawrence County could not have accepted the easement for public use. *Id.* at ¶ 20, 657 N.W.2d at 313. Consequently, we proceed to examine the remaining issues concerning the existence of a private access easement.

### 2. The access easement was not abandoned.

[¶ 12.] Sparks argues that two events resulted in Hofmeister's abandonment of the access easement. Sparks first argues that an abandonment occurred when the Forest Service improved an area logging road that provided Hailstorm an additional route of access to public roads. This Forest Service road was designated as 582–1. Sparks argues that, because 582–1 provided Hofmeister with an alternate access to Hailstorm, Hofmeister abandoned the access easement.

[¶ 13.] SDCL 43–13–12 sets forth the requirements to extinguish an easement. "A servitude is extinguished by the performance of any act upon either tenement, by the owner of the servitude, or with his assent, which is incompatible with its nature or exercise." *Id.* However, under SDCL 43–13–12, there must be an affirmative act of abandonment on the part of the owner of the easement to extinguish the easement. Mere nonuse of an easement, created by grant, is insufficient to satisfy this requirement. *Clark v. Redlich,* 147 Cal.App.2d 500, 305 P.2d 239, 244 (1957) (nonuse of easement by easement holder was insufficient to extinguish easement, even though easement owner had other access, and easement required extensive grading to make it suitable for travel). Therefore, while we have held that substituted access may be evidence of abandonment, that factor alone is not dispositive.

> The use of a substituted way may be evidence of abandonment of the original way. This, however, is not conclusive of non-use. The mere use of a new right-of-way will not extinguish the old. There must also be an abandonment by non-use of the old right-of-way.

*Shippy v. Hollopeter,* 304 N.W.2d 118, 121–122 (S.D.1981)(further citations omitted). The party claiming abandonment in such cases must show an intent to abandon the easement. *Cleveland v. Tinaglia,* 1998 SD 91, ¶ 26, 582 N.W.2d 720, 725.[4]

[¶ 14.] Here, Sparks argues that intent to abandon was demonstrated by the fact that after the Forest Service improved 582–1, Hofmeister stopped using the access easement other than when Hofmeister asked for a "construction easement" to do some work in Hailstorm. However, we first note that the Forest Service builds, services, opens and closes its roads for its own purposes. This record does not reflect that the Forest Service's motives in

---

4. Although we found that an access easement was abandoned in *Cleveland* (partially because of the use of an alternative route) that abandonment was also evidenced by the fact that a culvert had washed out several years before the dispute, and travel over the easement was impossible from that time on. *Cleveland,* 1998 SD 91, ¶¶ 26–27, 582 N.W.2d at 725–726.

improving 582-1 also reflected that Hofmeister intended to intentionally abandon the platted access easement.

[¶ 15.] We also note that other evidence reflects that Hofmeister did not intentionally abandon the easement. Hofmeister not only used the easement for construction access, but Hofmeister also took affirmative steps to *improve* the easement. Indeed, in the summer of 1995, Hofmeister spent money to place a culvert on a portion of the access easement. Furthermore, Sparks essentially conceded the existence of the access easement in his 1997 letter in which he referred to it as "the road we use for access to our homes" and asked for Hofmeister's help in improving it. If Hofmeister had unequivocally abandoned the access easement, Hofmeister would not have installed the culvert, he would not have agreed to pay $1,000 for improvements, and Sparks certainly would not have used the language he did in his letters to Hofmeister.

[¶ 16.] Sparks, however, also argues that Hofmeister abandoned the easement because Hofmeister did not obtain an easement from the Forest Service to cross the 400 foot strip of Forest Service land. Without crossing that Forest Service land, it would not have been possible to go from Hailstorm to HES 417, and ultimately to Nemo Road. However, Hofmeister's "legal right" to use the Forest Service land is irrelevant. The issue is simply whether Hofmeister has a platted easement on HES 417. Although evidence of a lengthy Forest Service refusal to permit crossing the 400′ strip could be some evidence of abandonment, the existence of a formal Forest Service easement is not dispositive because there is nothing in the record indicating that the Forest Service had precluded Hofmeister from crossing the Forest Service land. The only record evidence of blocked access was from Sparks'

gate on HES 417 at the Forest Service property line. Therefore, in light of all of the facts, a lack of a formal Forest Service easement does not reflect that Hofmeister had unequivocally abandoned the access easement on HES 417.

### 3. The access easement was not extinguished by prescription.

[¶ 17.] Sparks argues that the easement was extinguished by prescription. Sparks contends that since 1978, he precluded Hofmeister's use of the access road except by permission. We have held that an easement may be extinguished by prescription. An easement may be extinguished if the owner of the servient estate excludes the easement holder for the twenty-year statutory period. *Shippy,* 304 N.W.2d at 121; SDCL 15-3-1. To prove extinguishment, we believe that, like a party asserting the defense of permissive use to prevent the creation of a prescriptive right, the party asserting extinguishment by prescription also bears the burden of proof to show that the use was only permissive. *See generally Kougl v. Curry,* 73 S.D. 427, 432-433, 44 N.W.2d 114, 117 (1950) (stating that "[t]he owner of the servient estate, in order to avoid the acquisition of an easement by prescription, has the burden of rebutting this presumption by showing that the use was permissive.")

Here, there is nothing in the stipulation of facts to establish the length of the alleged "permissive use." Therefore, Sparks has not established that the access easement was only used by permission for more than twenty years and that the easement was extinguished by prescription.

### 4. The access easement was not extinguished when Sparks owned both the dominant and the servient tenements.

[¶ 18.] Sparks argues that the access easement was extinguished because at one

point in time, he simultaneously owned both the servient tenement (HES 417) and the land that benefited from the easement (Hailstorms). Sparks relies on SDCL 43–13–6, which provides that "[a] servitude is extinguished by the vesting of the right to servitude and the right to the servient tenement in the same person."

[¶ 19.] However, we need not address this issue because even if this access easement was extinguished, it was subsequently revived. Here, the record reflects

that if the easement was extinguished when Sparks owned both Hailstorm and HES 417 at the same time, during that same period of ownership, Sparks also deeded an identical[5] access easement for the benefit of Hailstorm to Hofmeister's predecessors in interest.

[¶ 20.] We affirm.

[¶ 21.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.

---

5. The original access easement was created by plat number 76–1420. When Sparks deeded Hailstorms to Hofmeister's predecessor in 1978, he specifically deeded the access easement referred to in plat 76–1420.

PLAT OF LOTS 3 THRU 5    LOT A OF H.E.S. 537
SECTION 2, T2N, R4E, B.H.M.
LAWRENCE COUNTY, SOUTH DAKOTA

Crossing Natural Forest Land
Public Access Easement
Private Property
Nemo Road