SALMON et ux., Respondents and cross-Appellants
v.
BRADSHAW, et ux., Defendants and Appellants

(173 N.W.2d 281)

(File No. 10550, 10560. Opinion filed December 23, 1969)

' **Davenport, Evans, Hurwitz & Smith, Robert C. Heege,** Sioux Falls, for defendants and appellants, **Neale, Newman, Bradshaw & Freeman,** Springfield, Mo., of counsel.

**Boyce, Murphy, McDowell & Greenfield,** Sioux Falls, for plaintiffs, respondents, and cross-appellants.

HANSON, Judge (On reassignment).

This action involves the respective rights of adjoining residential lot owners to a right-of-way in the City of Sioux Falls. Plaintiffs commenced the action for a declaratory judgment and for injunctive relief. Defendants counterclaimed with an action to quiet title and for damages. Both parties moved for summary judgment. The trial court entered judgment for plaintiffs grant-

ing them an easement over a portion of the easement area and enjoined defendants from interfering with plaintiffs' use of the right-of-way as established by the court. Both parties have appealed. In open court during oral argument on appeal defendants dismissed and abandoned their alleged claim for damages.

It appears that Reverend Casper M. Austin and his wife originally owned all of the property involved located in the Country Club Heights Subdivision of Minnehaha County. The Austin home was located on Lot 10 of Block 3. Lot 10 is a large irregular shaped lot situated approximately in the middle of the Block. It is surrounded on three sides by other irregular shaped smaller lots and is bounded on the west by Austin Drive. A narrow appendage extending off the southeast corner of Lot 10 runs eastward to Kiwanis Avenue.

On March 12, 1956 Reverend Austin and his wife sold and conveyed to plaintiffs, Wayne E. Salmon and Charlotte Salmon, by warranty deed, Lot 2 in Block 3 of the Country Club Heights Subdivision. Lot 2 is an irregular shaped lot abutting Lot 1 eastward, Lot 10 westward, and the appendage of Lot 10 on the south. At the time of the conveyance Lot 2 was landlocked having no access to either a private or public way. There existed, however, a driveway extending from Kiwanis Avenue west across the appendage part of Lot 10 and continuing on westerly across Reverend Austin's Lot 10 to Austin Drive.

On April 2, 1956 Reverend Austin and his wife granted plaintiff, Wayne E. Salmon, the following written easement:

"EASEMENT

BOOK 55 Mis Page 208

"CASPER M. AUSTIN and EDA MABEL AUSTIN, husband and wife, the owners of Lot 10 in Block 3, Country Club Heights, an Addition to the City of Sioux Falls, Minnehaha County, South Dakota in consideration of the sum of One Dollar ($1.00) and other good and valuable

consideration, the receipt of which is hereby acknowl-edged, from Wayne E. Salmon, do hereby give, grant and convey to Wayne E. Salmon, his heirs, successors and assigns, an easement as hereinafter described, in favor of and for the perpetual benefit of the certain real property described as Lot 2 in Block 3, Country Club Heights, an addition to the City of Sioux Falls, Minne-haha County, South Dakota, which property is presently owned by Wayne E. Salmon, for driveway and street purposes and for full purposes of ingress and egress to and from said Lot 2 in Block 3, Country Club Heights Ad-dition.

"The easement for driveway and street purposes herein granted is over, upon and across that certain portion of Lot 10 in Block 3, Country Club Heights Addi-tion lying between Lots 1, 2 and 18 in Block 3, Country Club Heights Addition to Sioux Falls, the purpose of the within grant being to grant access to Kiwanis Avenue from said Lot 2, Block 3, Country Club Heights, an Addi-tion to the City of Sioux Falls.

"Dated at Sioux Falls, South Dakota this 2nd day of April, 1956.

> Casper M. Austin
> Eda Mabel Austin"

The words in the easement "that certain portion of Lot 10 in Block 3, Country Club Heights Addition lying between Lots 1, 2 and 18 in Block 3," is a description of the narrow appendage extending off the southeast corner of Lot 10 running eastward to Kiwanis Avenue.

Plaintiffs constructed their home on Lot 2 and have con-tinuously resided there ever since. During the summer of 1956 plaintiffs also constructed a 16-foot wide concrete driveway ex-tending from their garage southeasterly across a portion of the easement area of Lot 10 to Kiwanis Avenue.

Some time later plaintiff Salmon at his own expense hard surfaced with asphalt the driveway on the easement area of Lot 10 west of his concrete drive. This was done, as plaintiff testified, because he used the driveway and because it was dusty. Later on, Reverend Austin hired plaintiff to blacktop the rest of the driveway extending west to Austin Drive.

On January 12, 1965 defendants, Reverend William B. Bradshaw and his wife, purchased Lot 10 of Block 3, Country Club Heights from the Estate of Casper M. Austin, deceased. When defendants purchased the Austin property the abstract of title was examined for them by an attorney in Sioux Falls who pointed out in his opinion that "entry #75 of said abstract mentions an easement that is over, upon and across a certain portion of the above described property. This driveway grants access to Kiwanis Avenue."

In the spring of 1965 Reverend Bradshaw erected posts and a chain at the Kiwanis end of the driveway. The chain was secured to the posts by a lock. A sign reading "Private Drive" was hung on the chain. This action followed after Reverend Brawshaw refused to remove the lock from the chain thereby denying plaintiffs any access to the easement area on Lot 10 except their 16-foot garage driveway.

The making of cross motions for summary judgment does not remove from consideration the primary question of whether there are any genuine issues of material facts. Each of the moving parties merely "concedes and affirms that there is no issue of fact only for purposes of his own motion". Vol. 3 Barron and Holtzoff, Federal Practice and Procedure, Section 1239. In·such case, a court is not warranted in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law in the absence of a genuine issue as to any material fact. American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, 2 Cir., 388 F.2d 272.

The trial court concluded the easement of April 12, 1956 granted plaintiffs a "floating easement" at an unspecified and

uncertain point across Lot 10. The court fixed and granted plaintiffs an easement "where their present concrete drive is now emplaced, together with the North 16 feet of that portion of Lot 10 extending from the Southwest corner of said Lot 2 eastward to Kiwanis Avenue." Neither party is satisfied with the judgment rendered. However, both parties agree the easement granted to plaintiffs is clear, definite and unambiguous in its terms and provisions and it is unnecessary to resort to extrinsic facts or circumstances to determine its meaning.

Plaintiffs contend that in accordance with the clear, definite, and unambiguous provisions of the easement they are entitled to the full use and enjoyment of the easement area. By limiting their right-of-way to the concrete drive and the north 16 feet of the easement area the trial court erroneously reduced their easements rights.

Defendants, on the other hand, contend that when a right-of-way is granted in general terms, without defined limits, the subsequent use and location of the way by the grantees operates to fix and determine its location and extent. Consequently, the trial court should have limited plaintiffs' right-of-way to the 16-foot driveway.

■ ■ We agree with both parties the easement of April 12, 1956 is clear, definite and unambiguous in all its terms and provisions, making it unnecessary to resort to extrinsic facts or circumstances to determine its meaning or extent. In construing a grant, conveyance, or other instrument creating an easement " 'the document itself, and that only, can, in the first instance, be looked at to discover the extent and nature of the agreement and the terms of the grant. If on the face of the document no doubt arises that the words are used in their primary sense, and if, read in that sense, they are plain and unambiguous, the matter is concluded'. Gale on Easements, p. 80. Where the intention of the parties can be ascertained, nothing remains but to effectuate that intention. 2 Devlin on Real Estate, 835. The terms of the grant, as they can be learned either by words clearly expressed, or by just and sound construction, will reg-

ulate and measure the rights of the grantee." Witman v. Stichter, 299 Pa. 484, 149 A. 725. This universal rule is stated in 25 Am.Jur.2d, Easements and Licenses, § 73, as follows: "Where an easement is claimed under a grant or reservation, the extent of the rights granted or reserved depends upon the terms of the grant or reservation, properly construed. If it is specific in its terms, it is decisive of the limits of the easement." See also 28 C.J.S. Easements § 80, p. 759; 2 Thompson on Real Property, § 387, p. 567; 3 Powell on Real Property, § 415; Restatement of the Law of Property, §§ 482, 483, and see 80 A.L.R.2d, p. 774.

The above rule applies here. The easement granted to plaintiffs is clear, definite, and certain. The easement instrument itself fixes, regulates, and defines the benefits granted. It specifically grants plaintiffs a perpetual easement for the benefit of Lot 2, Block 3, Country Club Heights Addition for driveway and street purposes and for full purposes of ingress and egress from said Lot 2 to Kiwanis Avenue over, upon and across that certain portion of Lot 10 in Block 3, Country Club Heights Addition lying between Lots 1, 2 and 18 in Block 3, Country Club Heights addition. The conveyance itself specifically grants a perpetual easement for driveway and street purposes and for full purposes of ingress and egress from Lot 2 to Kiwanis Avenue over, upon, and across an area on Lot 10 of a definite width and length.

Plaintiffs are accordingly entitled to the free and uninterrupted use and enjoyment of the entire easement area for the clearly expressed purposes of the grant. This includes the "last inch as well as the first inch". Bump v. Sanner, 37 Md. 621.

■ ■ It is immaterial whether or not plaintiffs made use of the full rights of the easement area in the past. Where "the language of the grant clearly gives the grantee a right in excess of the one actually used, such right would still exist notwithstanding the exercise of a lesser privilege." Knox v. Pioneer Natural Gas Company, Tex.Civ.App., 321 S.W.2d 596. An easement created by an express grant is not lost by mere nonuse or partial use. See 25 A.L.R.2d Annot., LOSS OF EASEMENT § 3, p. 1275.

"Where the way over the surface of the ground is one of expressly defined width, it is held that the owner of the easement has the right, free of interference by the owner of the servient estate, to use the land to the limits of the defined width even if the result is to give him a wider way than necessary". Tarr v. Watkins, 180 Cal.App.2d 362, 4 Cal.Rptr. 293 and Brooks v. Voight, 224 Md. 47, 166 A.2d 737. Cases and authorities involving easements not specifically defined or acquired and established by prescription or implication have no application to the facts herein.

The judgment appealed from is affirmed and remanded with directions to modify the same in accordance with this opinion.

BIEGELMEIER, P. J., and ROBERTS, J., concur.

RENTTO and HOMEYER, JJ., dissent.

BIEGELMEIER, Presiding Judge (concurring).

I concur in Judge Hanson's opinion, but desire to clarify the issues and situation presented as they appear to me.

First, as to the contentions of the parties, defendants-appellants Bradshaws, speaking in their own words state in their brief:

"* * * we deem it appropriate at this point to call the Court's attention to the fact that both the plaintiffs (Salmons) and the defendants (Bradshaws) have taken the position in this proceeding that the easement of April 2, 1956, is clear, definite and unambiguous in its terms and provisions. The parties are in agreement on this. (Defendants in a page-long footnote cite and quote from plaintiffs' brief, Conclusions of Law and filed objections to this effect)

\* \* \* \* \* \*

"* * * defendants (Bradshaws) took the position (1) that since both sides conceded that the easement * * * is, in fact, clear, definite and unambiguous in

its terms and provisions, the intention of the grantors of the written easement must be determined from the wording of the written instrument itself, and no resort may be had to extrinsic evidence".

The parties in their own words seem to agree on that issue.

Secondly, though Judge Hanson's opinion states the situation in words, it is difficult by words alone to describe the odd and unusual plat of Block 3 without a copy of it, which does appear in one of the briefs. The block itself is odd in that eight lots are clustered in the south side or base, with nine in the north or curved cone with Lot 10 dividing them. It runs east and west from a width of nearly 200' fronting Austin Avenue on the east to Kiwanis on the west and can be described as the right half of a table tennis paddle, the handle of which is the 40' by 140' appendage extending from the bulk of Lot 10 between plaintiffs' Lot 2 and Lot 18 to the south. Without some right to use this appendage for "driveway and street purposes and for full purposes of ingress and egress to and from" plaintiffs' Lot 2 and "access to Kiwanis Avenue", plaintiffs' lot would have been of little or no value. The owners of Lot 10 and plaintiffs as purchasers of Lot 2 recognized this; hence the now disputed easement.

This picture of the situation constrains me to concur in the opinion as to the territorial extent of the easement; its size, shape and location and the wording of it are all consonant with each other and point to the result reached in the opinion.

The easement in words does not nor does the opinion grant exclusive right to use the corridor nor any use in deprivation of any rights the owners of Lot 10 to use it; thus neither may block nor bar use of the other or interfere with such use, though the mode of use may not here now be in issue.

RENTTO and HOMEYER, Judges (dissenting).

Plaintiffs brought this action for a declaration of their rights under an easement granting right of ingress and egress and to

enjoin the defendants from interfering with their use of such easement. The majority has now determined from the written instrument itself that the easement covers the whole area of a so-called "narrow appendage" which actually is a tract of land with a 40 foot frontage on Kiwanis Avenue and a depth of 140 foot plus into Lot 10 with trees, shrubs, flowers and lawn situated on a major portion thereof. It holds that the dominant tenement has the right to use the first and the last inch of that whole area for purposes of ingress and egress to Lot 2. We do not believe this conclusion is supported by the instrument, by the law, or by any reasonable construction of the record before us.

The majority starts from the premise that "both parties agree the easement granted to plaintiffs is clear, definite and unambiguous in its terms and provisions and it is unnecessary to resort to extrinsic facts or circumstances to determine its meaning". This is an incorrect analysis of defendants' position and is not supported by the record or by the briefs. Neither was it the view of the trial court.

An examination of the record and a reading of the briefs reveals that defendants acknowledged that the instrument granted to plaintiffs a right-of-way over the "appendage" for ingress and egress to Lot 2 and to that extent it was clear, definite and unambiguous. However, defendants have never conceded that precise location of such easement and the width and length thereof was definite and certain and ascertainable from the instrument itself without resort to extrinsic evidence. The majority's holding is in accord with plaintiffs' contentions, but it certainly does not correspond with defendants' position in this litigation. For example, in defendants' brief they say "But plaintiffs and defendants took different positions with reference to this written easement" and then they summarize their respective positions. In such summarization defendants state "the parties (plaintiffs) had themselves over nine years before the starting of this suit put their own interpretation on this written instrument * * *" by constructing and using "the 16-foot wide

concrete driveway at the point where they chose on the servient estate * * * as their 'access to Kiwanis Avenue from said Lot 2, Block 3' ".

Defendants' position is further manifested in Findings of Fact and Conclusions of Law they proposed:

Finding of Fact IV: "The right to the passageway or right of way from Lot 2 across Lot 10 onto Kiwanis Avenue is definite in the easement, but the particular location of that passageway or right of way is not fixed or described in the easement itself."

Conclusion of Law V: "With the execution of the easement instrument of April 2, 1956, the only thing which remained indefinite and uncertain was the specific location of the right of way across the servient estate."

In our opinion, the written instrument does nothing more than fix the general location of the easement area. Such being the case the authorities we have been able to find without exception hold that "a grant or reservation of a right of way 'over' a particular area, strip or parcel of ground is not to be construed as providing for a way as broad as the ground referred to." 25 Am.Jur.2d, Easements and Licenses, § 78, p. 485. 28 C.J.S. Easements § 79: "Where an easement in land is granted in general terms, without giving definite location and description to it, so that the part of the land over which the right is to be exercised cannot be definitely ascertained, the grantee does not thereby acquire a right to use the servient estate without limitation as to the place or mode in which the easement is to be enjoyed." To the same effect is a statement from Thompson on Real Property, Vol. 2, 1961 Replacement § 387. Cases in support are found in Annot., 28 A.L.R.2d, § 7, p. 265. See also, Hyland v. Fonda, 44 N.J.Super. 180, 129 A.2d 899.

Since material facts essential to a proper disposition of this case are in dispute and appear not to have been fully developed, in our opinion summary judgment should not have been granted.