2004 SD 125

**Edward J.S. PICARDI and Sandra J. Picardi, Plaintiffs and Appellees,**

v.

**Richard ZIMMIOND and Lori Zimmiond, Defendants and Appellants,**

and

**Chris A. Soppe and Cindy Soppe, Defendants.**

Nos. 23147, 23173.

Supreme Court of South Dakota.

Considered on Briefs Oct. 4, 2004.

Decided Nov. 23, 2004.

John K. Nooney of Thomas Nooney Braun, Solay & Bernard, LLP, Rapid City, South Dakota, Attorney for plaintiffs and appellees.

Robert A. Haivala, Sturgis, South Dakota, Attorneys for defendants and appellants.

GILBERTSON, Chief Justice.

[¶ 1.] Edward J.S., M.D., and Sandra J. Picardi filed declaratory action to determine the extent of an express perpetual road easement across properties owned by Richard and Lori Zimmiond, and Chris A. and Cindy Soppe in Meade County, South Dakota. The Fourth Circuit Court, Judge Jerome A. Eckrich, III presiding, found the Picardi easement to be a private perpetual road easement of forty-four feet in width, which did not preclude Zimmionds and Soppes from general use of the easement as long as that use did not interfere

with the use or enjoyment of the easement by Picardis. Zimmionds appealed the decision as to the width of the easement, and Picardis filed notice of review that the easement was granted for the Picardis' exclusive use.

Affirmed.

## FACTS AND PROCEDURE

[¶ 2.] In July 1998, Dr. Edward Picardi and Sandra Picardi purchased 320 acres of land in Meade County, South Dakota. Because the property was landlocked, access from Picardis' property to a community road and 132nd Avenue required traversing an unplatted piece of property owned by Thomas D. Hildebrand and Glenda D. Hildebrand. The Picardis and the Hildebrands reached an agreement for an easement across the Hildebrands' land, which was executed on December 4, 1998.

[¶ 3.] The executed and recorded agreement provided for a perpetual road easement for ingress and egress across the Hildebrands' property to the Picardis' property. However, the writing did not explicitly state the physical dimensions or location of the Picardi easement. At the time of negotiations, Picardis made clear their need to maneuver a double-wide modular home along the easement, as well as accommodate construction machinery and semi-trailers when construction on their permanent residence began. The writing described the nature of the use and the scope of the enjoyment of the easement in general terms. Oral agreements between Dr. Picardi and Thomas Hildebrand set the physical dimensions of the easement at forty-four feet in width to accommodate a planned roadway of twenty-eight feet plus an eight foot setoff for drainage and ditches on each side.

[¶ 4.] Sometime during the second half of 1998, the Picardis hired Wayne Sundstrom to build the twenty-eight foot wide road and two eight foot ditches. Picardis planned on moving onto their property before winter 1998, by locating a double-wide modular home on the property and eventually building a permanent structure. Picardis and Sundstrom decided time constraints would not allow both the construction of the twenty-eight foot wide road and the Picardis' move prior to the onset of winter weather. Therefore, it was agreed that a roadway of sufficient size to accommodate the modular home would be constructed before winter, and in the spring the twenty-eight foot road and eight foot ditches would be constructed as originally planned.

[¶ 5.] Sundstrom completed a sixteen to eighteen foot wide road and buried an "extra-wide" culvert beneath the road to accommodate the spring construction. Sundstrom cut down large pine or spruce trees and other vegetation on both sides of the sixteen to eighteen foot road. Both the extra-wide culvert and the clear cut swath were obvious and visible adjuncts to the new road, and depicted the intended forty-four foot wide easement. Sundstrom died during the winter, and the road surface was never expanded to the twenty-eight feet as originally planned.

[¶ 6.] In December 2000, Hildebrands subdivided their adjacent property and recorded the subdivision plat in the Meade County Register of Deeds office on January 4, 2001. Lots D and E were created at that time. The plat located the Picardi easement over and along Lots D and E but did not describe the width of the easement, nor was it drawn to scale as required by Meade County Ordinance 20. If the plat had been intended to be drawn to scale, the easement as depicted would have indicated a roadway of approximately thirty feet in width.

[¶ 7.] Soppes purchased Lot E from Hildebrands in late July or early August of 2001. Soppes were told by Hildebrand prior to the closing that the Picardi easement was a "private road" for the Picardis and that the Soppes had no right of access over and across the easement as located on Soppes' Lot E. Soppes did not take issue with the terms or dispute the width of the easement.

[¶ 8.] Prior to closing with Hildebrands on Lot D, Zimmionds were given information as to the width of the Picardi easement. Zimmionds physically inspected the lot several times between May and October 2001 and were told by Hildebrand more than once prior to closing that the easement was forty-four feet in width. Hildebrand showed Zimmionds the plat depicting the Picardi easement. Zimmionds conceded at the time of their inspections that the physical manifestations of the easement were obvious and appeared wider than the sixteen foot road itself. Mrs. Zimmiond herself testified the swath cut through the trees appeared to be around forty feet in width. The purchase agreement noted the sale was "subject to easements, covenants, and reservations of record." The title policy identified "an easement in favor of Picardi."

[¶ 9.] After closing on the sale, Zimmionds began construction of their home, garage and driveway. The site selected virtually abutted the sixteen foot roadway, and created a bottleneck when cars were parked along the roadway in front of the Zimmiond's residence garage. At times passage for even one vehicle was impossible due to cars parked at the Zimmiond residence.

[¶ 10.] After communications broke down between the parties and attempts to remedy the situation failed, Picardis filed a petition for declaratory judgment seeking to establish the width and the exclusive use of the easement. After trial, judgment and an order were entered on December 23, 2003. The court order set the location of the Picardi easement and its width at forty-four feet, and ordered that the Soppes and Zimmionds as owners of the servient tenements could use the easement.[1] The Soppes and Zimmionds use was limited only to the extent such use was not inconsistent with the express use and purpose of the Picardi easement, and did not impede, hinder, limit, or restrict the use and enjoyment of the Picardi easement by the dominant tenement.

[¶ 11.] Zimmionds appealed and Picardis filed notice of review. There are two issues for our review:

1. Whether the trial court erred when it found the Picardi easement was forty-four feet in width.

2. Whether the Picardi easement was granted solely for Picardis' exclusive use.

## STANDARD OF REVIEW

[¶ 12.] The trial court's findings of fact are reviewed by this Court under the clearly erroneous standard. *Block v. Drake*, 2004 SD 72, ¶ 8, 681 N.W.2d 460, 463 (citation omitted). "Clear error is shown only when, after a review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.'" *New Era Mining Co. v. Dakota Placers, Inc.*, 1999 SD 153, ¶ 7, 603 N.W.2d 202, 204 (citing *Rabenberg v. Rigney*, 1999 SD 71, ¶ 4, 597 N.W.2d 424, 425 (quoting *Cleveland v. Tinaglia*, 1998 SD 91, ¶ 16, 582 N.W.2d 720, 724.)). We review conclusions of law under the de novo standard, giving no deference to the trial court's

1. The property on which an easement is imposed is the servient tenement, while the property that enjoys the use of an easement is the dominant tenement. SDCL 43–13–3.

decision. *City of Deadwood v. Summit, Inc.,* 2000 SD 29, ¶ 9, 607 N.W.2d 22, 25 (citations omitted).

## ANALYSIS AND DECISION

[¶ 13.] **1. Whether the trial court erred when it found the Picardi easement was forty-four feet in width.**

[¶ 14.] The parties agree Picardis have an easement over the Soppes and Zimmionds servient tenements. Soppes do not dispute the width of forty-four feet. Zimmionds contend the trial court erred in setting the width of the Picardi easement at forty-four feet rather than at the sixteen to eighteen feet in width as originally constructed in 1998.

[¶ 15.] Zimmionds argued the original grant did not detail the scope of the easement, other than to label it a "roadway." Zimmionds advanced the argument that because Picardi constructed the roadway at sixteen to eighteen feet in width, the easement is adequate to serve the purpose for which it was intended and Picardis have acquiesced to the smaller width. Zimmionds further argue that to allow Picardis to expand the width of the roadway and add on the width of two eight foot ditches, an addition of twenty-six to twenty-eight feet in width, is an impermissible enlargement of an easement, as the language of the original grant does not provide for ditches.

[¶ 16.] An easement is a property interest in land owned by or in the possession of another, which entitles the easement owner "to a limited use or enjoyment of the land in which the interest exists." *Knight v. Madison,* 2001 SD 120, ¶ 4, 634 N.W.2d 540, 542 (quoting *Gilbert v. KTI, Inc.,* 765 S.W.2d 289, 293 (Mo.App. 1988)). An easement may be created by a written grant, by plat or by a force of law. *Kokesh v. Running,* 2002 SD 126, ¶ 12, 652 N.W.2d 790, 793 (citing *Knight,* 2001 SD 120, ¶ 6, 634 N.W.2d at 542). An easement by grant does not require a definite statement as to width, dimensions, or exact location. *Northwest Realty Co. v. Jacobs,* 273 N.W.2d 141, 145 (S.D.1978) (citations omitted). The extent of an easement by grant can be ascertained either by the "words clearly expressed, or by just and sound construction" of the easement document. *Cleveland,* 1998 SD 91, ¶ 18, 582 N.W.2d at 724 (quoting *Salmon v. Bradshaw,* 84 S.D. 500, 505–06, 173 N.W.2d 281, 284 (1969)). The past failure of the grantee to make use of the full rights of the easement area as contained in the grant will not lessen the extent of the original grant in the future. *Salmon,* 84 S.D. at 506, 173 N.W.2d at 285 [2] (quoting *Knox v. Pioneer Natural Gas Co.,* 321 S.W.2d 596, 600 (TexCivApp 1959)).

[¶ 17.] There is no dispute that Hildebrand and Dr. Picardi orally agreed to a forty-four foot wide easement, and that the writing memorializing the agreement does not include a reference to the width. However, Zimmionds were put on notice that the width of the easement was greater than the width of the roadway as it appeared at the time Zimmionds were contemplating the purchase of Lot E. Mrs. Zimmiond herself admitted at trial that she observed the swath cut through the vegetation and trees and understood it to be part of the easement, and which she herself admitted was approximately forty feet in width. The record is also clear that Zimmionds understood that a viable roadway easement must be wider than the mere road surface for purposes of construction, support and maintenance of the roadway. Zimmionds were also familiar

---

**2.** No claims of adverse possession exist in this case.

with the plat of Lot E, which indicated the Picardi easement. While not drawn to scale, the plat indicated a roadway of approximately thirty feet in width.

[¶ 18.] Given the knowledge possessed by Zimmionds, they are bound by the terms of the easement as agreed to by Hildebrands and Picardis. Under the facts of this case, the failure of Picardis to expand the roadway to encompass the full width of the easement prior to the Zimmionds' purchase of their property is not relevant to determining the extent of the Picardi easement. The extent of the Picardi easement was set by the agreement between Hildebrands and Picardis at the time the grant was recorded. The trial court did not err when it found the Picardi easement to be forty-four feet in width.

[¶ 19.] **2. Whether the Picardi easement was granted solely for Picardis' exclusive use.**

[¶ 20.] Picardis contend the easement was granted solely for their use, to the exclusion of the grantors and their successors and assigns. Picardis base their argument on the language of the grant, which reads in pertinent part:

1. GRANT OF EASEMENT: In consideration of the payment of One Dollar ($1.00) and other good and valuable consideration, and to the mutual benefits occurring to the parties hereto, the adequacy and sufficiencies of which is hereby acknowledged, each party to the other, Hildebrand hereby grant to Picardi a perpetual easement to Picardi Ranch Place, a roadway leading westerly from 132nd Avenue, at and along the community well access, to the east boundary of Section 20, which property is owned by Picardi.

The easement over the portion of Hildebrands' above-described real property is necessary for use for roadway purposes, and includes the right to use as a means of ingress and egress to and from Picardis' property. This easement shall run with Hildebrands' real property, and the title to such property and be binding upon Hildebrands, their heirs and any person who shall after the effective date of this instrument, acquire title to Hildebrands' property.

This easement shall be used for access to one single family residence located upon the Picardi property. Picardi, their heirs, successors and assigns shall not be allowed to construct any additional residences upon the Picardi property, which depend upon use of this easement for access. *This easement shall allow access to the Picardi property only and to no other property.*

(emphasis added). Picardis advance a reading of the last sentence of section one which suggests that the easement may only be used to access the Picardi property, and not the servient tenements upon which the easement is located.

[¶ 21.] "Unless the owner of the servient estate expressly agrees otherwise, the owner reserves the right to use the property in any manner or for any purpose, so long as the owner does not interfere with the use or enjoyment of the easement." *Knight,* 2001 SD 120, ¶ 7, 634 N.W.2d at 543 (citations omitted). SDCL 43–4–16 provides that the reservation in any grant is interpreted in favor of the grantor.[3] For this reason, neither the physical size, nor the purpose, nor the use of an easement may be expanded beyond the terms as contained in the original

---

**3.** SDCL 43–4–16 provides: "A grant is to be interpreted in favor of the grantee, except that a reservation in any grant, and every grant by a public officer or body, as such, to a private party, is to be interpreted in favor of the grantor."

grant. *Knight*, 2001 SD 120, ¶ 6, 634 N.W.2d at 542 (citation omitted). Any such attempt by the grantee unduly interferes with the reserved rights of the grantor. *See Id.* ¶ 7, 634 N.W.2d at 543.

[¶ 22.] The holder of a private perpetual road easement does not have the right per the easement to exclude all others from access to the roadway. *Id.* ¶ 8. The fee owner of the road easement has the authority to determine who shall be allowed access to the road, or to grant additional easements over the property, so long as additional users and uses do not interfere with the dominant tenement owner's rights as contained in the grant. *Id.*

[¶ 23.] The owner of realty who has granted an easement retains all incidents of ownership not specifically granted away. *Id.* ¶ 7. In the context of adverse possession, we have stated that one who retains incidents of ownership is not stripped of those incidents by lack of continual use or acts of kindness concerning voluntary allowance of use by third parties. *Summit*, 2000 SD 29, ¶ 27, 607 N.W.2d at 29–30. "To conclude otherwise would only serve to encourage aggressive, assertive action across boundary lines, and not good neighborliness." *Id.* (citing *Manz v. Bohara*, 367 N.W.2d 743, 748 (N.D.1985)).[4]

[¶ 24.] The writing in this case does not contain explicit language renouncing the grantor's reserved rights to the easement. It is illogical that a grantor of an easement would grant away all benefits to his or her property including actual access thereto and retain all detriments such as the legal obligation for real estate taxes. For such an unusual situation to arise, the nature of the grant would have to be explicit and not implied. The language identified by Picardis, when read in context, serves as a limitation upon Picardis' use of the easement and not upon the grantor's reserved rights. Hildebrands are not mentioned in the paragraph containing the language identified by Picardis. The entire paragraph is in reference to what Picardis may or may not do with regard to the easement.

[¶ 25.] SDCL 43–2–1 provides: "[t]he ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others." Ownership of the land in fee simple upon which the easement is located is in Zimmionds and Soppes as the successors in interest to Hildebrands, subject to Picardis rights in the easement. As we noted in *Summit:*

> This doctrine . . . is not intended to subvert neighborliness or prudence whereby a neighbor allows another to use part of his land for the neighbor's (or their mutual) benefit, and this concept grows in importance as we progressively become a more congested society. Therefore, the mere fact that a landowner allows his neighbor to occupy or use part of his land does not automatically fix the boundary between them or give the neighbor a right to use or take the property in perpetuity.

---

4. As an example, recently in *Block* one of the issues was the right of a landowner to erect a gate in part reason to keep his cattle in. 2004 SD 72, 681 N.W.2d 460. We also noted that "unless granted away by easement, the owner of real estate retains the right to determine the extent of vehicular traffic he or she will allow on his or her property." *Id.* ¶ 26, 681 N.W.2d at 467. Thus, the owner does not give away the right to require use of the gate during times the cattle are present by not requiring its continual closure by easement holders during times when they are not. *Id.* ¶ 25. The counter proposition, an all or nothing theory of ownership, is not supported by our law and is not consistent with "good neighborliness" or common sense.

2000 SD 29, ¶ 27, 607 N.W.2d at 30 (quoting *Finley v. Yuba County Water District*, 99 Cal.App.3d 691, 700, 160 Cal.Rptr. 423, 429 (1979)). The trial court did not err when it held the Picardi easement was not for the exclusive use of Picardis.

### Conclusion

[¶ 26.] The Picardi easement is forty-four feet in width according to the terms of the agreement between Picardis and Hildebrands. Zimmionds and Soppes are not precluded from using the easement, as long as their use does not interfere with Picardis' right to use the entire forty-four feet of the easement as a roadway. The holding of the trial court is affirmed.

[¶ 27.] SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.