2005 SD 24

**Edward J.S. PICARDI and Sandra J. Picardi, Plaintiffs and Appellees,**

v.

**Richard ZIMMIOND and Lori Zimmiond, Defendants and Appellants,**

and

**Chris A. Soppe and Cindy Soppe, Defendants.**

No. 23258.

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 2005.

Decided Feb. 16, 2005.

See also 689 N.W.2d 886.

John K. Nooney of Thomas Nooney Braun, Rapid City, South Dakota, Attorneys for plaintiffs and appellees.

Robert A. Haivala, Haivala Law Firm, Sturgis, South Dakota, Attorney for defendants and appellants.

GILBERTSON, Chief Justice.

[¶ 1.] Richard Zimmiond and Lori Zimmiond appealed a taxation of costs and disbursements stemming from an application filed by Edward J.S., M.D., and Sandra J. Picardi. The Picardis filed the application after the Fourth Circuit Court, Judge Jerome A. Eckrich, III presiding, found for Picardis on an underlying easement dispute.[1] Zimmionds contended the trial court did not have jurisdiction to tax costs and disbursements while the underlying case was on appeal to the South Dakota Supreme Court. Zimmionds also appealed the trial court's March 9, 2004 order enforcing its judgment, which prohibited Zimmionds from obstructing the Picardi easement with unattended or parked vehicles, trailers, equipment, fence posts and poles or other items of personalty. We affirm in part and reverse in part, and remand.

## FACTS AND PROCEDURE

[¶ 2.] In July 1998, Dr. Edward Picardi and Sandra Picardi purchased 320 acres of land in Meade County, South Dakota from Thomas D. Hildebrand and Glenda D. Hildebrand. Because the acreage was landlocked by Hildebrands' property, the Picardis contracted for a perpetual easement across Hildebrands' land. The easement was executed on December 4, 1998, and provided in relevant part:

The easement over the portion of Hildebrands' above-described real property is necessary for use for roadway purposes, and includes the right to use as a means of ingress and egress to and from Picardis' property. This easement shall run with Hildebrands' real property, and the title to such property and be binding upon Hildebrands, their heirs and any person who shall after the effective date of this instrument, acquire title to Hildebrands' property.

This easement shall be used for access to one single family residence located upon the Picardi property. Picardi, their heirs, successors and assigns shall not be allowed to construct any additional residences upon the Picardi property, which depend upon use of this easement for access. This easement shall allow access to the Picardi property only and to no other property.

[¶ 3.] The writing described the nature of the use and the scope of the enjoyment of the easement in general terms, but failed to note the width of the easement. Oral agreements between Dr. Picardi and Thomas Hildebrand set the physical dimensions of the easement at forty-four feet in width to accommodate a planned roadway of twenty-eight feet plus an eight foot setoff on each side for drainage and ditches. A sixteen to eighteen foot wide road was constructed sometime during the second half of 1998, along with "extra-wide" culverts beneath the road to accommodate the eventual construction of the twenty-eight foot roadway and accompanying setoffs.

[¶ 4.] In December 2000, Hildebrands subdivided their adjacent property and recorded the subdivision plat in the Meade County Register of Deeds office on Janu-

---

1. The facts of the easement dispute are set forth in our opinion, *Picardi v. Zimmiond*, 2004 SD 125, 689 N.W.2d 886.

ary 4, 2001. Lots D and E were created at that time. The plat indicated Picardis' easement crossed both Lots D and E. Chris A. and Cindy Soppe purchased Lot E from Hildebrands in late July or early August of 2001. Zimmionds purchased Lot D in October 2001.

[¶ 5.] After closing on the sale, Zimmionds began construction of their home, garage and driveway. Zimmionds garage was built approximately one to two feet away from the edge of the forty-four foot easement. Zimmionds' vehicles were parked daily within the forty-four foot easement, and at times within the sixteen to eighteen foot roadway. At times, passage for even one vehicle was impossible due to cars parked in front of the Zimmiond residence and garage.

[¶ 6.] Zimmionds placed other items within the easement. Fence posts with reflective white paint were placed along the edge of the eighteen foot roadway to indicate turns in the roadway.[2] Zimmionds also placed a horse fence within the easement, located along the edge of a portion of the current roadway where it is approximately twelve feet in width.

[¶ 7.] Attempts to negotiate a resolution of the respective rights between the parties failed. As a consequence, Picardis filed a petition for declaratory judgment seeking to establish the width and the exclusive use of the easement. After trial on the issues, judgment and an order were entered on December 23, 2003. The court order set the location of the Picardi easement and its width at forty-four feet. The court also ordered that the Soppes and Zimmionds could use the easement as long as such use was not inconsistent with its express use and purpose, and did not impede, hinder, limit, or restrict the use and enjoyment of the easement by Picardis.

[¶ 8.] Zimmionds appealed the trial court's judgment and order as to the width of the easement, and Picardis filed notice of review on the issue of whether the easement was granted solely for Picardis' use. These issues were reviewed in our opinion *Picardi v. Zimmiond*, 2004 SD 125, 689 N.W.2d 886 (hereinafter *Picardi I*). We affirmed the lower court, holding the width of the easement was forty-four feet and the easement was not for the exclusive use of Picardis by virtue of the language of the easement grant.

[¶ 9.] On December 12, 2003, before Zimmionds filed their appeal in Picardi I, Picardis filed an application for taxation of costs and disbursements with the trial court. The trial court conducted a hearing on the matter on March 3, 2004. The trial court entered an order on March 9, 2004 awarding Picardis costs and disbursements in the amount of $2,609.96 as the prevailing party in *Picardi I* at the trial court level.

[¶ 10.] At the March 3, 2004 hearing, the trial court also considered Picardis' motion for removal of any and all structures located within the forty-four foot easement. At the hearing, Dr. Picardi testified that is was necessary to clear the easement of all obstructions as Picardis planned to have part of their property logged by a commercial logger. Picardi further testified it was necessary to remove a fence Zimmionds had located six feet from the center point of the easement in order for heavy, commercial logging equipment to travel the roadway. The record indicates this fence is located off of

---

**2.** See the attached photo which indicates the location of the easement road, Zimmiond garage, Zimmiond vehicles and fence posts at the edge of the road. The stake held by the person in the picture purports to indicate the point twenty-two feet from the centerline of the easement.

the roadway as it is currently configured, but within the width designated for the yet to be constructed twenty-eight foot roadway. Therefore, the Zimmionds' fence is located within an area currently serving as a ditch alongside a twelve-foot wide section of the roadway.

[¶ 11.] In its March 9, 2004 order, the trial court ordered Zimmionds remove the fence as it was located within the forty-four foot easement. The trial court's order also prohibited Zimmionds from placing any item of personalty within the forty-four foot easement, "including but not limited to fencing posts, poles, unattended or parked vehicles, trailers, or equipment."

[¶ 12.] There are two issues for review by this Court:

1. Whether the trial court had jurisdiction to tax costs against Zimmionds while the underlying case was on appeal to the South Dakota Supreme Court.

2. What are the servient and dominant tenement owners' rights under the easement, including whether the owner of the servient tenement may place items of personalty within the easement.

## STANDARD OF REVIEW

[¶ 13.] The jurisdiction of circuit courts is established by statute in SDCL 16-6-9. The issue of whether a circuit court loses jurisdiction to tax costs against a non-prevailing party once that party appeals the underlying litigation is an issue of statutory interpretation. It is well settled that "[s]tatutory interpretation presents a question of law reviewable de novo." *Zoss v. Schaefers*, 1999 SD 105, ¶ 6, 598 N.W.2d 550, 552 (citing *Satellite Cable Srvs. v. Northern Electric*, 1998 SD 67, ¶ 5, 581 N.W.2d 478, 480). We review a circuit court's conclusions of law under the de novo standard, giving no deference

to its conclusions of law. *Sherburn v. Patterson Farms, Inc.*, 1999 SD 47, ¶ 4, 593 N.W.2d 414, 416 (citing *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771).

[¶ 14.] "The construction of a written contract is a question of law." *Kimball Investment Land, Ltd. v. Chmela*, 2000 SD 6, ¶ 10, 604 N.W.2d 289, 292 (citing *Cotton v. Manning*, 1999 SD 128, ¶ 15, 600 N.W.2d 585, 588) (additional citations omitted). This Court reviews the effects and terms of a contract under the de novo standard. *Id.* (citing *Campion v. Parkview Apartments*, 1999 SD 10, ¶ 25, 588 N.W.2d 897, 902) (additional citations omitted).

## ANALYSIS AND DECISION

[¶ 15.] **1. Whether the trial court had jurisdiction to tax costs against Zimmionds while the underlying case was on appeal to the South Dakota Supreme Court.**

[¶ 16.] Under SDCL 15-17-37, "[t]he prevailing party in a civil action or special proceeding may recover expenditures necessarily incurred in gathering and procuring evidence or bringing the matter to trial." It is within the trial court's discretion to award costs in a civil action to the prevailing party, unless prohibited by law. *Eccleston v. State Farm Mut. Auto. Ins. Co.*, 1998 SD 116, ¶ 20, 587 N.W.2d 580, 583. The prevailing party for purposes of SDCL 15-17-37 is "the party in whose favor the decision or verdict is or should be rendered and judgment entered." *Culhane v. Michels*, 2000 SD 101, ¶ 33, 615 N.W.2d 580, 590 (citing *Michlitsch v. Meyer*, 1999 SD 69, ¶ 12, 594 N.W.2d 731, 734 (quoting *Noble v. Shaver*, 1998 SD 102, ¶ 26, 583 N.W.2d 643, 648 (quoting *Strand v. Courier*, 434 N.W.2d 60, 65 (S.D.1988)))). SDCL 15-17-56 pro-

vides: "[d]isbursements taxed by a party, in the trial court, who did not prevail on appeal, are void. The trial court may, in its discretion, in the interest of justice, allow the taxation of disbursements by a party who prevailed in the trial court but lost the appeal."

[¶ 17.] In the instant case, the trial court awarded costs and disbursements to Picardis, the prevailing party in the declaratory action in *Picardi I*. The trial court did not abuse its discretion given that Picardis were the party in whose favor the trial verdict was rendered and judgment entered. Given the potential remedies available under SDCL 15–17–55 through SDCL 15–17–58 to a party that does not prevail below but who does ultimately prevail on appeal, a trial court does not abuse its discretion when it taxes disbursements while that party appeals the underlying litigation.

[¶ 18.] Zimmionds also argued that the trial court was without jurisdiction to tax costs on the underlying judgment until after their appeal was completed. Zimmionds are incorrect in their contention. Costs are capable of taxation once the civil action or special proceeding is completed at the trial court level and the prevailing party has been determined. SDCL 15–17–37. An appeal of the underlying litigation does not deprive the trial court of jurisdiction to award costs. *Strand*, 434 N.W.2d at 66. The non-prevailing party's interests are protected in that he or she may appeal the taxation as a separate final judgment as was done here, and the taxation is still subject to a review by this Court. "When [the order for costs] is made subsequent to the entry of a judgment the order may not be reviewed upon appeal from the judgment, but only by a

direct appeal from the order." *Id.* (citations omitted).

[¶ 19.] **2. What are the servient and dominant tenement owners' rights under the easement, including whether the owner of the servient tenement may place items of personalty within the easement.**

[¶ 20.] The terms and extent of an easement by grant are ascertained either by the "words clearly expressed, or by just and sound construction" of the easement document. *Picardi I*, 2004 SD 125, ¶ 16, 689 N.W.2d at 890 (citing *Cleveland v. Tinaglia*, 1998 SD 91, ¶ 18, 582 N.W.2d 720, 724 (quoting *Salmon v. Bradshaw*, 84 S.D. 500, 505–06, 173 N.W.2d 281, 284 (1969))). We look first to the language of the grant itself to discover the extent and nature of the easement agreement and its terms. *Salmon*, 84 S.D. at 505, 173 N.W.2d at 284 (citation omitted). We review the language used by giving terms their plain and ordinary meaning, and utilize no additional interpretation in the absence of ambiguity. *Id.* (citation omitted). If the terms of the agreement are specific in nature, the terms are "decisive of the limits of the easement." *Id.* (quoting 25 Am.Jur.2d, Easements and Licenses, § 73). We will not resolve disputes over unambiguous language by resorting to what the parties might have included in a contract. *Wessington Springs Educ. Ass'n v. Wessington Springs School Dist. #36–2*, 467 N.W.2d 101, 104 (S.D.1991) (citing *Raben v. Schlottman*, 77 S.D. 184, 190–191, 88 N.W.2d 205, 208 (1958)).

[¶ 21.] The grantor of an easement, who is also the owner in fee of the servient tenement, and his or her heirs and assigns, retain all incidents of ownership over the property not specifically contracted away.[3] *Picardi I*, 2004 SD 125,

---

**3.** SDCL 43–13–3 provides: "The land to

which an easement is attached is called the

¶ 22, 689 N.W.2d at 892 (citing *Knight v. Madison,* 2001 SD 120, ¶ 7, 634 N.W.2d 540, 543). The owner of the servient tenement generally reserves the right to use the easement property in any manner or for any purpose, "so long as the owner does not interfere with the use or enjoyment of the easement." *Knight,* 2001 SD 120, ¶ 7, 634 N.W.2d at 540 (citations omitted). The owner of the servient tenement retains the exclusive legal authority to regulate access by third parties to a nonexclusive private roadway easement. *Picardi I,* 2004 SD 125, ¶ 22, 689 N.W.2d at 892 (citing *Knight,* 2001 SD 120, ¶ 8, 634 N.W.2d at 543).

[¶ 22.] The owner of an easement, or dominant tenement, is entitled to "a limited use or enjoyment of the land in which the interest exists." *Id.* ¶ 16, 689 N.W.2d at 890 (citing *Knight,* 2001 SD 120, ¶ 4, 634 N.W.2d at 542 (quoting *Gilbert v. KTI, Inc.,* 765 S.W.2d 289, 293 (Mo.App. 1988))). The easement owner may not expand the physical size, purpose or use of the easement beyond the terms as contained in the original grant. *Knight,* 2001 SD 120, ¶ 6, 634 N.W.2d at 542 (citing *Townsend v. Yankton Super 8 Motel,* 371 N.W.2d 162, 165–66 (S.D.1985)). "Any such attempt by the easement owner unduly interferes with the reserved rights of the owner of the servient tenement." *Picardi I,* 2004 SD 125, ¶ 21, 689 N.W.2d at 892 (citing *Knight,* ¶ 8, 634 N.W.2d at 543).

[¶ 23.] The language of the easement document in this case is clear, definite and certain in its purpose and scope. The purpose of the easement is for "use for roadway purposes, and includes the right to use as a means of ingress and egress to and from Picardis' property." The language of the document limits the Picardis scope of use "for access to one single family residence located upon the Picardi property."

[¶ 24.] We previously held in *Picardi I* that the easement was intended to be forty-four feet in width, and include a twenty-eight foot roadway with two adjacent eight foot ditches.[4] *Picardi I,* 2004 SD 125, ¶ 18, 689 N.W.2d 886. The easement provides Picardis with the right to use the roadway for ingress and egress to their single family residence, and no more.

**Right to determine who may travel upon the easement:**

[¶ 25.] Our law is clear that the owner of the servient tenement retains all the incidents of ownership in the easement. *Knight,* 2001 SD 120, ¶ 7, 634 N.W.2d at 543 (citations omitted). The grant of an easement does not dispossess the landowner. *Lazy Dog Ranch v. Telluray Ranch, Corp.,* 965 P.2d 1229, 1234 (Co.1998) (citations omitted). However, the owner of the servient tenement may not interfere with the dominant tenement owner's rights as defined by the easement document. *Picardi I,* ¶ 21 (citing *Knight,* 2001 SD 120, ¶ 7, 634 N.W.2d at 543) (citations omitted).

[¶ 26.] The holder of the dominant tenement may not enlarge the use of the easement beyond the terms of the grant. *Knight,* 2001 SD 120, ¶ 6, 634 N.W.2d at 542. *See Block v. Drake,* 2004 SD 72, ¶ 26, 681 N.W.2d 460, 467 (holding "unless granted away by easement, the owner of real estate retains the right to determine the extent of vehicular traffic he

---

dominant tenement; the land upon which a burden or servitude is laid is called the servient tenement."

4. In *Picardi I* it was necessary for this Court to resort to parole evidence on the issue of the width, as the easement agreement was silent on that issue. 2004 SD 125, ¶ 17, 689 N.W.2d 886.

or she will allow on his or her property"). *See also Stevens v. Anderson*, 393 A.2d 158, 159 (Me.1978) (holding phrase for "cattle, teams and foot passengers" in express grant did not include passage for automobiles); *Krause v. Taylor*, 135 N.J.Super. 481, 343 A.2d 767, 770 (N.J.Super.Ct.App.Div.1975) (holding grant limited to right of way easement could not be extended to include right of use for utility purposes); *Richardson v. Horn*, 282 Ky. 5, 137 S.W.2d 394, 398 (1940) (holding right of way easement did not include right to drain water across easement); *Dana v. Smith*, 117 Me. 198, 103 A. 157, 158 (1918) (holding grant of right of way to pass by foot did not include right to a cartway or passage by automobile). "[T]he scope of a roadway easement 'for ingress and egress to a tract on which a home is to be built means more than a surface roadway'—it also includes ingress and egress for other necessities." *Arcidi v. Town of Rye*, 150 N.H. 694, 846 A.2d 535, 543 (N.H.2004) (quoting *Bivens v. Mobley*, 724 So.2d 458, 464–65 (Miss.Ct.App.1998)). However, if the dominant tenement owner engages in a use of the easement outside its express purpose, it becomes an unauthorized presence upon the land. *Marcus Cable Associates, L.P. v. Krohn*, 90 S.W.3d 697, 703 (Tex.2002) (citation omitted). This is so even if the unauthorized use does not materially increase the burden upon the servient tenement. *Id.*

[¶ 27.] It would have been an option for the contracting parties to specifically list those who are granted access over the easement. Such a listing is contained elsewhere in the lease in reference to a different subject-matter: "Pacardi, their heirs successors and assigns." (*Compare Knight*, 2001 SD 120, ¶ 6, 634

N.W.2d at 542 "Madison' [his] agents, employees and invitees."). Under such language, those who are granted access are specifically listed to the exclusion of others. Herein, however, the parties chose to define the right of access by the nature of the easement, that being for the construction and occupation of a single residence by Pacardis and reasonable access thereto, and solely for that purpose.

[¶ 28.] The terms of the grant limit the ability of the owner of an express right of way easement to invite third parties to use the easement. *Jackson v. Pacific Gas & Electric Co.*, 94 Cal.App.4th 1110, 1118, 114 Cal.Rptr.2d 831 (2001). Use of the easement by the dominant tenement owner's guests and invitees is permissible as long as the use is compatible with the rights granted under the easement and reasonably related to the enjoyment of the easement. *Arcidi*, 846 A.2d at 541 (citing *Gowen v. Cote*, 875 S.W.2d 637, 641 (Mo. Ct.App.1994) (citations omitted)). *See also Picardi I*, 2004 SD 125, ¶ 23, 689 N.W.2d at 892, n. 4 (citing *Block* 2004 SD 72, 681 N.W.2d at 467); *Jackson*, 94 Cal.App.4th at 1118, 114 Cal.Rptr.2d 831.

[¶ 29.] Picardis are the holders of the right of ingress and egress to their single family residence. As such, they, their family, and social invitees are clearly allowed to travel upon the roadway under the easement. The scope of the Picardi easement for ingress and egress to their single family home also includes travel to and from the dominant tenement by such invitees as utility company service vehicles, contractors to build and repair the home, and other types of services that are necessities required to support the home.[5]

---

5. This list is meant to illustrate the types of support services permitted under the classification of "necessities." It is not meant to be an exhaustive listing of permissible "necessities."

[¶ 30.] Picardis, as the easement holder, do not have the right to expand the use of the easement beyond that which is necessary to support the maintenance and operation of their single family home. It is beyond the intent of the parties, as contained within the four corners of the document, to permit Picardis to expand the use of the roadway to include access for a purely commercial venture, such as commercial logging, or other commercial traffic that is unrelated to activities necessary to support the single family home.[6]

**Right to locate personalty within the easement:**

[¶ 31.] We have previously held that the owner of a servient tenement may not place a locked gate upon the easement that restricts the easement holder from traveling upon a portion of the easement intended as a right of way. *Salmon,* 84 S.D. at 506, 173 N.W.2d at 285. However, we have not had occasion to review the issue of a servient tenement owner's right to locate personalty on land subject to a right of way easement, but not part of the roadway itself.

[¶ 32.] Only one jurisdiction, Missouri, appears to have dealt with this issue. Courts in Missouri begin by noting that the servient tenement owner retains all incidents of ownership over the easement and may use it for his or her own purposes up until the point where such use interferes with the dominant tenement owner's reasonable use of the easement. *See Maasen v. Shaw,* 133 S.W.3d 514, 520 (Mo.Ct.App.2004). The right to "store, park, plant, and construct on the non-roadway portions of the easement remain with the servient owner." *Id.* (citing *Earth City*

*Crescent v. Assoc's v. LAGF Assoc's–Mo., L.L.C.,* 60 S.W.3d 44, 46 (Mo.Ct.App.2001); *Frain v. Brda,* 863 S.W.2d 17, 19 (Mo.Ct. App.1993); *Baum v. Glen Park Properties,* 660 S.W.2d 723, 726–27 (Mo.Ct.App.1983); *Schroer v. Brooks,* 204 Mo.App. 567, 224 S.W. 53, 57 (1920)). The servient tenement owner's uses of non-roadway portions of the easement include parking, signage, curbing, planting or removal of trees, sod and other vegetation. *Id.*

[¶ 33.] Thus in the present case, Zimmionds may not engage in any conduct that interferes with Picardis' right of ingress and egress to their single family residence. Therefore, no permanent structures such as fences may be placed within the roadway as it is currently configured. In addition, once Picardis elect to exercise their right under the easement to expand the roadway from its current width to its maximum allowable width of twenty-eight feet, all permanent structures within the twenty-eight foot width designated as roadway must be removed. Until that time, permanent structures are permissible in any area of the easement other than in the roadway itself.

[¶ 34.] Zimmionds, as the owners in fee of the land underlying the forty-four foot easement, have the right to use those portions of the easement not intended for ingress and egress to the Picardis' residence, in any reasonable manner that does not interfere with Picardis' ability to travel upon the roadway. This includes the right to use the ditches of the current roadway, and the ditches of any future roadway, for parking, signage, fences, fence posts, curbing, planting or removal of trees, sod, or other vegetation. Therefore, personalty

---

**6.** The exception to this general prohibition would be where it would be necessary to bring in a commercial logger and appropriate commercial logging equipment to properly manage Picardis' forested lands in order to protect the Picardi home from the threat of fire. This would be for the preservation of the Picardi residence the same as would the right of access to fire trucks should the house be on fire.

may be located by Zimmionds within the area designated and used as ditches adjacent to the road, as long as the personalty does not unreasonably interfere with ingress and egress.

[¶ 35.] The pictures in the record (including the one attached to this opinion) indicate Zimmionds' vehicles parked in front of their garage are off the roadway as it is currently configured, and thus are permissible under the terms of the easement. However, any vehicles parked behind them in the roadway itself are not permissible as they at times preclude passage for even one vehicle, and unduly interfere with Picardis' right of ingress and egress to their property. If and when Picardis elect to expand the roadway, these vehicles as currently parked directly in front of Zimmionds' garage are permissible as long as the vehicles are located in the non-roadway portion of the easement and do not block passage along the roadway.

[¶ 36.] Affirmed in part and reversed in part, and remanded for a new judgment consistent with this opinion.

[¶ 37.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

APPENDIX D